Genoveva R. SOSA, Plaintiff-Appellant-Cross Appellee,

v.

David FITE, d/b/a Specialty Sales & Service Co., et al., Defendants,

Tropical Savings and Loan Association, Defendant-Appellee-Cross Appellant,

Esperanza Sosa Hernandez et al., Intervenors.

No. 73-3856.

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1974.
Rehearing Denied Aug. 29, 1974.

J. L. Covington, Edinburg, Tex., Gordon L. Briscoe, Harlingen, Tex., for plaintiff-appellant.

Ralph L. Alexander, John F. Rowin, Edinburg, Tex., for defendant-appellee.

Carlos F. Vela, Harlingen, Tex., for Esperanza Sosa Hernandez, et al.

Curtis Bonner, Harlingen, Tex., for Cabco, Inc.

Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.

DYER, Circuit Judge:

Genoveva Sosa appeals from the district court's judgment permitting her to rescind a home improvement contract violative of the Truth-in-Lending Act, 15 U.S.C.A. § 1601 et seq., but imposing an award against her for the balance owing on the invalid contract and impressing a judgment lien to secure the outstanding indebtedness. In a cross-appeal the lending institution which financed the home improvement contract, Tropical Savings and Loan, contests the court's award to Sosa of $750.00 in attorneys' fees. We affirm the granting of rescission and the award of attorneys' fees, but reverse the monetary judgment against Sosa and accompanying judgment lien on her realty.

The unnecessarily lengthy history of this litigation began unremarkably in August 1969 when David Fite, a home improvement contractor of dubious repute, entered into a contract with Mrs. Sosa to provide and install aluminum siding on her house. Included in the various contract documents, none of which Sosa grasped as she was unversed in the English language, was an instrument creating a deed of trust in favor of Tropical to secure Sosa's payment of the total sales price. The secured nature of this transaction triggered the operation of section 1635 of the Truth-in-Lending Act, which grants consumers who suffer the creation of any security interest with respect to realty used as a residence an absolute right of rescission in instances where the creditor fails to make detailed disclosures of credit terms required by the Act. Much to their subsequent dismay, neither Fite nor Tropical ever provided Sosa with the full panoply of statutorily required information, either before or after the work was undertaken.[1] Despite her creditors' fatal omissions, Sosa faithfully remitted monthly payments to Tropical over a considerable period of time, until her disenchantment with Fite's shoddy

---

1. Neither Fite nor Tropical has cross-appealed the district court's findings of Truth-in-Lending violations in connection with the underlying transaction. *See* Killings v. Jeff's Motors, Inc., 5 Cir. 1974, 490 F.2d 865, 866.

craftsmanship culminated in June 1971 in her refusal to make further payments. Tropical then foreclosed against Sosa's interest in the realty under the trust deed and sold the property at a foreclosure sale to a third party. At this point Sosa invoked her statutory right of rescission with respect to the original contract by directing letters to this effect to both Fite and Tropical in 1971. When no responsive steps were taken by any of the creditors to undo the transaction, Sosa filed suit in the court below to enforce her election to rescind the contract. The court erroneously concluded at first that it lacked jurisdiction over the subject matter, but after this misimpression was corrected on appeal, Sosa v. Fite, 5 Cir. 1972, 465 F.2d 1227, the court upheld her election of rescission and accordingly invalidated the foreclosure sale, but then entered judgment in favor of the creditors for $864.86 [2] and impressed a judgment lien on Sosa's realty interest to secure this amount. Unhappy with what she perceives as half a loaf, Sosa is before us again and strenuously argues that the court's judgment against her is at odds with the express directions of the Truth-in-Lending Act. We agree.

## RIGHT OF RESCISSION

With rigorous regard for providing consumers with full disclosure of the terms and conditions of credit purchases, Congress fashioned an elaborate system of remedies and penalties to effectuate compliance with the Truth-in-Lending Act and to redress grievances stemming from its violation. Our concern with this detailed remedial machinery is limited, however, to the rescission device created by section 1635 [3] of the Act. In substance, section 1635 vests a continuing power of rescission in the credit purchaser until three days following delivery of statutorily prescribed disclosures whenever as an incident of the credit transaction a security interest is

2. This figure was apparently derived on the basis of Sosa's understanding of what the total contract price was, namely $2,200. The written agreement, however, provided for a total price of $5,324.16, payable in 96 monthly installments of $55.46 each. Notwithstanding the written agreement, the court entered a monetary judgment reflecting the difference between what Sosa had actually paid and the amount she originally thought was owing on the contract.

3. Section 1635 provides in pertinent part:
 (a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later by notifying the creditor, in accordance with regulations of the Board of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.
 (b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

acquired in the debtor's realty which he uses as his residence. The open-ended nature of the rescission right is clearly illustrated in the present case, since by the time Sosa sought to abrogate the transaction Fite had long since completed his handiwork and, indeed, Sosa's interest had been sold out from under her by the trustee upon her default. Notwithstanding this display of patience with the ill-advised transaction, Sosa was at liberty to rescind the contract at her pleasure so long as the requisite disclosures of credit terms were not forthcoming.[4] *See, e. g.,* Wachtel v. West, 6 Cir. 1973, 476 F.2d 1062, 1065; Charnita, Inc. v. F.T.C., 3 Cir. 1973, 479 F.2d 684, 687; Palmer v. Wilson, N.D. Cal.1973, 359 F.Supp. 1099, 1102. This much is generally agreed to by everyone, although Tropical lamely protests that Sosa's belated rescission, by failing to cite chapter and verse as to specific Truth-in-Lending violations, was not a "good faith" rescission.[5] The difficulty arises in regard to the respective obligations of creditor and debtor when the latter invokes the ultimate consumer remedy of rescission. In the present case, the district court was of the view that Sosa, albeit entitled to rescission, was nonetheless obligated to pay the creditors an additional $864.86.

Under the provisions of section 1635(b), when the debtor exercises the rescission right, he is no longer liable for any finance or other charge, and any security interest acquired by the creditor in the debtor's residential realty becomes void. At this juncture, the creditor incurs several responsibilities. Within ten days after receipt of a rescission notice, the creditor is obligated, first, to return any downpayment or earnest money and, second, to take any appropriate steps to reflect the termination of the security interest. According to the statute, "[u]pon the performance of the creditor's obligations" in this regard, the debtor shall tender to the obligee either the property or the reasonable value thereof if return of the property would be inequitable or impracticable. The debtor's duty to tender is not limitless, however, for the property vests in the debtor without any obligation to pay if the creditor fails to take possession of the property within ten days of tender.

In view of this statutory scheme, several facts with respect to the Sosa-Fite transaction take on particular relevance. First, included in Sosa's notice of rescission was an express offer to return the aluminum siding, an overture which elicited no response whatsoever from the creditors. Second, neither Fite nor Tropical, both of whom were statutory "creditors," *see* 15 U.S.C.A. § 1602(f), ever performed their statutory obligations imposed by section 1635(b) since, for one, they utterly failed to take any steps to reflect termination of the security interest in Sosa's property. The significance of Sosa's proffered return and the creditors' failure to comply with clear statutory directives is that Sosa did in fact attempt to make a tender, even though under a literal reading of the statute the creditors were unentitled to any tender at all by virtue of their failure to perform their express obligation of expurgating records of references to the invalidated security interest. *See* Palmer v. Wilson, *supra*, at 1102.

It is true that the statute contemplates an orderly progression of specific events, culminating in the debtor's tender and the creditor's recoupment, which

---

4. One court has suggested that since rescission is an equitable remedy, the defense of laches may be available to a creditor if the debtor who enjoys the use of the property exchanged in the transaction sleeps on his statutory rights. Wachtel v. West, 6 Cir. 1973, 476 F.2d 1062, 1065, cert. denied, 1973, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114. Without addressing this issue, we simply note that in any event there is no indication that this potential defense was ever interposed by the creditors, nor do they press such an argument on appeal.

5. Ironically, Tropical itself fails to cite authority for this attempted engrafting of new requirements with respect to the section 1635 notice of rescission, an unsurprising failure since no such authority exists.

never came to pass in this case. Specifically, section 1635(b) envisions responsive action on the creditor's part to a rescission notice, after which the debtor then becomes obligated to tender either the property or a sum reflecting its reasonable value. This precise statutory scheme was aborted in this case due to the creditors' failure to comply with statutory requirements, hence Sosa's responsibility to make the specific statutory tender was excused by the creditors' omissions.

█ To hold otherwise would create a gross anomaly, for no tender in the exact scheme envisioned by the statute could ever be effected by a debtor in the most egregious of circumstances, namely when a creditor steadfastly refuses to perform his express obligations upon receiving the notice of rescission. Congress scarcely could have contemplated such a disruptive commercial stand-off. We therefore conclude that under the circumstances of this case the debtor's obligation to restore the creditor to the *status quo ante* was discharged by an offer accompanying notice of rescission, since the creditor within ten days of notification failed to return all monies previously paid by the debtor or to reflect dissolution of the security interest.[6]

██ Our disposition of this case is not altered by the recent decision in Ljepya v. M. L. S. C. Properties, N.D.Cal. 1973, 353 F.Supp. 866. In that case, the court permitted a borrower to rescind a tainted loan transaction violative of Truth-in-Lending on condition of repaying the principal, without interest, to the creditor within ten days of judgment. There is no indication in that case that the borrowers had ever attempted to return the proceeds of the loan, but instead the debtors were seeking simply to extricate themselves from the unwanted transaction. In that situation, it would have been consonant with the statute only for the debtors to remit to the creditor the loan proceeds in order to rescind the agreement, inasmuch as section 1635(b) is clearly designed to restore the parties as much as possible to the *status quo ante*. But in the case *sub judice*, Sosa's express offer of restoration fell on deaf ears, thereby rendering applicable, upon the creditor's failure to comply with section 1635(b), the plain directive of the statute: "If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor *without obligation on his part to pay for it*." 15 U.S.C.A. § 1635(b) (emphasis supplied).

Congress' intended operation of the statute, as evidenced by the 1635(b) creditor-forfeiture provision, therefore clearly calls for a debtor windfall if the creditor does not set about to rectify his earlier nondisclosures in the manner envisaged by the statute. In fact, the Act flatly provides that if his creditor continues in his untoward ways, the debtor incurs no obligation to pay for property which he is at the same time entitled to keep. That this result was intended is clear beyond peradventure, for one of the measure's principal sponsors in the House stated: "[I]f the seller does not come back to pick up [his property] after a 10-day period [following the notice of rescission], the buyer can keep this

---

**6.** By so holding, we do not suggest that ordinarily a debtor's tender may accompany notice of rescission and thereby begin the ten-day period within which the creditor can recover the property or its reasonable value. As previously indicated, the statute contemplates a tender by the debtor *after* the creditor has performed his duties, within ten days, of returning all payments and reflecting the lien's termination. But here the creditor *never* discharged these responsibilities, much less within ten days, and therefore, assuming *arguendo* that a debtor must nonetheless at least offer to restore the creditor to the *status quo* (an assumption which is by no means necessarily correct, *see* Palmer v. Wilson, *supra*, at 1102), this responsibility is amply fulfilled by an initial tender accompanying notice of rescission, unless the creditor within a ten-day period complies with § 1635(b). In the latter event, the creditor then may well be entitled to the precise statutory tender, or at least to another ten-day period within which to recover the property or demand its reasonable value.

item and he does not even have to pay for it. . . ." 114 Cong.Rec. 14398 (1968) (remarks of Congresswoman Sullivan).

 But reaching this conclusion does not end our analysis. With respect to the Sosa-Fite transaction, the district court's judgment left intact all that had gone before, in addition to imposing a new, independent monetary obligation on the debtor. At the time of rescission Sosa had already paid a total of $1,335.14 to Fite and Tropical under the contract. Statutory rescission clearly envisions the creditors' return of this entire amount to the debtor within ten days of notification of rescission, at which point the debtor then becomes obligated to tender the property or its "reasonable value." [7] The Act provides in pertinent part: "Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money given as earnest money, downpayment, *or otherwise*. . . ." (Emphasis supplied). This particular language suggests, of course, Congress' assumption that rescission would be effected at a relatively early stage of the transaction when the debtor's only payments to the creditor were in some form of downpayment or earnest money deposit. Nonetheless, section 1635(b) explicitly allows rescission indefinitely until such time as the requisite disclosures are actually made, and it is in light of this continuing power of rescission that the phrase "or otherwise" must be interpreted. For if a hypothetical debtor rescinded an agreement after tendering a downpayment and making two monthly installments, an interpretation of the provision to the effect that the debtor was entitled only to a return of his downpayment, whereas his two installments would be forfeited, would do grave violence to the statutory language, particularly if the debtor elected to return the property and if such would be fair and

practicable. The only distinction between Sosa and this hypothetical debtor is, of course, that Sosa delayed longer in deciding to invoke the rescission right. There is, however, no difference in principle. Therefore, upon being notified of her rescission, Fite and Tropical were obligated to return all monies Sosa had paid, with the statutorily embodied expectation that upon their further compliance with 1635(b), Sosa would indisputably be obligated to tender either the property or its reasonable value. The creditors, of course, failed to carry out any of their statutory duties, and thus their lament of any inequity being visited upon them is utterly unpersuasive, for the power was completely theirs to prevent this parade of creditor horribles from ever occurring.

Indeed, Fite and Tropical are by no means the unsuspecting victims of some complex regulatory entrapment, for they were at all times on clear notice of the possible forfeiture of both money and property resulting from their pattern of continuous misconduct. Regulations promulgated by the Federal Reserve Board expressly provide that no performance of a consumer credit contract should be undertaken until the creditor has reasonably satisfied himself that the customer has not exercised his right of rescission. 12 C.F.R. § 226.9(c) (1974). Moreover, the legislative history suggests Congress' awareness that a contractor would "ordinarily be taking a risk" if he undertook performance of the contract before full disclosure was made. 114 Cong.Rec. 14388 (1968) (remarks of Congresswoman Sullivan).

We therefore conclude that Sosa cannot lawfully be required to make further payments, and thus the lien impressed by the district court to secure this supposed indebtedness must fall as well, and that she is entitled to full restitution of all amounts previously paid to Fite and Tropical pursuant to the contract.

---

7. Again, under the precise wording of the statute the debtor becomes obligated to tender the property or its reasonable value only "[u]pon the performance of the creditor's obligations. . . ." 15 U.S.C.A. § 1635(b). *See* Palmer v. Wilson, *supra*, 359 F.Supp. at 1102.

## ATTORNEYS' FEES

In cross-appealing from the district court's award of attorneys' fees, Tropical urges us to overturn the court's judgment in this respect on the two-pronged basis that congressional silence concerning attorneys' fees in rescission actions is of controlling significance and that the judiciary should therefore not legislate interstitially where Congress has failed to act. Tropical strenuously argues that Congress' express allowance of attorneys' fees in actions under the civil penalty provision of section 1640(a)(2) [8] of the Act, a section clearly inapplicable to this case,[9] compels application of the maxim of statutory construction, "Expressio unius est exclusio alterius." We do not think that merely verbalizing this sound principle of construction ends our investigation.

▆▆▆ Instead, we begin with the settled proposition that congressional goals underlying the Truth-in-Lending Act include the creation of "a system of 'private attorney generals' who will be able to aid the effective enforcement of the Act." Thomas v. Myers-Dickson Furniture Company, 5 Cir. 1973, 479 F.2d 740, 748. See also Ratner v. Chemical Bank New York Trust Company, S.D.N.Y.1971, 329 F.Supp. 270, 280. Thus, an individual suit on a private cause of action under Truth-in-Lending may nonetheless have public dimensions, since successful efforts directed toward vindicating private rights will aid in bringing about compliance with the regulatory scheme. See Buford v. American Finance Company, N.D.Ga.1971, 333 F.Supp. 1243, 1248. Additional public-related benefits are provided by the *stare decisis* effect successful litigation may have entitling others to statutorily provided relief. See Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184. Sosa has therefore effectuated a strong congressional policy and is entitled to attorneys' fees, in the exercise of the court's discretion, even though the statute sued under does not expressly provide for such an award. See, e. g., Mills v. Electric Auto-Lite Co., 1970, 396 U.S. 375, 390, 90 S.Ct. 616, 24 L.Ed.2d 593; Long v. Georgia Kraft Co., 5 Cir. 1972, 455 F.2d 331, 336; Lee v. Southern Home Sites Corp., 5 Cir. 1971, 444 F.2d 143; Sims v. Amos, M.D.Ala.1972, 340 F.Supp. 691, 693, aff'd, 1972, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215. Moreover, the fact that other parts of the same statute do provide for attorneys' fees does not foreclose an award under provisions which are silent on the matter, so long as the suit is one which vindicates congressional policy. *Mills, supra*, 396 U.S. at 390–391, 90 S.Ct. 616; Smolowe v. Delendo Corporation, 2 Cir. 1943, 136 F.2d 231, 241, cert. denied, 1943, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

Indeed, it is unsurprising that the rescission provision of the Truth-in-Lending Act does not address the issue of attorneys' fees, for that section, unlike the civil penalty provision of section 1640 which does allow for such fees, does not even contemplate the necessity of judicial intervention to effect rescission. On the contrary, the section creates legal remedies which have binding legal effect absent any court action. Thus, under section 1635, a debtor's notice of

---

8. Section 1640(a) provides:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

9. Section 1640(e) provides for a one-year statute of limitations, which bars any prayer by Sosa thereunder, inasmuch as the transaction was consummated more than one year prior to suit. Chevalier v. Baird Savings Ass'n, E.D.Pa.1974, 371 F.Supp. 1282, 1284.

**122**

rescission operates *ipso facto* to abrogate the contract, without the necessity for judicial acquiescence or ratification. Section 1640, on the other hand, provides for a system of monetary penalties which can only be implemented by the courts, hence the relevance of litigation costs in enforcing civil penalties was abundantly clear to Congress. In sum, Sosa has been forced to resort to federal court only because the creditors refused to recognize and abide by the plain operation of the rescission remedy, which should have been afforded self-operating effect without the need for judicial involvement.

■ Finally, in light of Sosa's successful prosecution of this cause, we are mindful that the district court may also award additional attorneys' fees for a meritorious appeal in Truth-in-Lending litigation, Thomas v. Myers-Dickson Furniture Company, *supra,* 479 F.2d at 748. Any additional award which may be made should be determined by the district court upon remand.

Affirmed in part; reversed in part; and remanded.