Farmer Frank TAPPIN, Jr. and Laura Tappin Brinkley, Plaintiffs-Appellees, Cross-Appellants,

v.

BASTROP LOAN CO., INC., et al., Defendants-Appellants, Cross-Appellees.

No. 77–1863.

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1980.

284

James A. Hobbs, West Monroe, La., for defendants-appellants, cross-appellees.

Stephen J. Katz, Bastrop, La., George M. Strickler, Jr., New Orleans, La., for plaintiffs-appellees, cross-appellants.

Before WISDOM, HILL and VANCE, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This case arises under the Truth-in-Lending Act, 15 U.S.C.A. §§ 1601–1693r, and the regulations promulgated thereunder by the Federal Reserve Board.

Some time in the summer of 1973, Farmer Frank Tappin went to Bastrop Auto Sales, Inc. to buy an automobile. After settling on a used Oldsmobile, Farmer Frank and his brother Ollie C. Tappin went next door to Bastrop Loan Co., Inc. (Bastrop) to arrange financing. The loan ultimately agreed upon was for $1,852.03; interest on the loan was calculated at 28.25% per annum. The loan was secured by a chattel mortgage on certain movable property belonging to Farmer Frank and a mortgage on Ollie's home.

In 1974, after the Tappins failed to keep up their payments, Bastrop filed suit in the Fourth Judicial District Court of Louisiana, Morehouse Parish. Early in 1975, Farmer Frank contacted Bastrop's manager in an effort to settle the matter out of court. It was agreed that Farmer Frank would make a lump sum payment to make up arrearag-

es, and thereafter resume his regular payments. In addition, Farmer Frank agreed to pay Bastrop $508.13 to cover attorneys' fees and court costs incurred in the Louisiana lawsuit. Since the $508.13 was to be paid in monthly installments, a finance charge of $52.12 was assessed. The terms of the agreement were never reduced to writing. Despite the agreement, on February 21, 1975, Bastrop obtained a default judgment against the Tappins in the Louisiana court.

This appeal stems from a suit filed in district court by the Tappins, seeking an injunction against the execution of the Louisiana judgment, recission of the 1973 loan agreement, and statutory damages under the Truth-in-Lending Act.[1] The district court initially ordered that the loan transaction be rescinded and the mortgages cancelled. The request for damages, attorneys' fees, and expungement of the Louisiana judgment were denied. Damages were denied based on the court's finding that any cause of action arising from the 1973 agreement was barred by the 1-year statute of limitations, and that, since the 1975 agreement did not constitute a refinancing, no new disclosures were required under the Truth-in-Lending Act. On reconsideration, the court held that the 1975 agreement was a refinancing, requiring new disclosures.[2] Farmer Frank was awarded attorneys' fees in the amount of $1,379.17 and damages equal to twice the amount Bastrop had charged as interest on its legal costs. Ollie Tappin was denied both damages and attorneys' fees on the ground that, since he had not participated in the refinancing agreement, his cause of action was barred by the statute of limitations.

I. *Recission of the 1973 Agreement*

In their motion for summary judgment, appellees alleged seven violations of the Truth-in-Lending Act. Since the number of violations committed by a lender is not relevant for purposes of liability, *Gerasta v.*

---

1. Ollie Tappin died in May, 1976, and Laura Tappin Brinkley was substituted as party plaintiff.

2. The district court found that the 1975 agreement had the effect of extending the maturity date of the original loan.

*Hibernia National Bank*, 575 F.2d 580, 585 (5th Cir. 1978), we briefly review but one of the alleged violations.

■ Bastrop is alleged to have violated the Act by failing to itemize miscellaneous fees incidental to the purchase of the automobile. Bastrop does not argue that these omissions were not violations; rather, it asserts that it is protected by 15 U.S.C.A. § 1640(f), which provides a good faith defense to violators of the Act. Bastrop contends that it acted in good faith because it relied on model forms prepared by the Federal Reserve System which do not contain spaces for itemization of fees other than finance charges. We simply cannot see how Bastrop's failure to comply with the Act, in the face of regulations which should have indicated to them that their reading of the forms was incorrect,[3] constitutes an omission "in good faith in conformity with any rule, regulation, or interpretation thereof by the Board . . . ." 15 U.S.C.A. § 1640(f). Accordingly, we affirm the order of the district court rescinding the 1973 agreement. We add that this applies as well to the 1975 agreement, whether or not that agreement constitutes a refinancing.[4]

## II.  *The 1975 Agreement*

■ The major point of disagreement in this case is whether the 1975 agreement, whereby Farmer Frank promised to continue his regular monthly payments and reimburse Bastrop for its legal expenses, was a refinancing of the original loan. Bastrop emphasizes that the 1975 agreement was never reduced to writing. Thus, it is argued, the transaction was merely an informal workout agreement not requiring any new disclosures. The Tappins, on the other hand, claim that the 1975 agreement extended the maturity date of the original loan, and, therefore, that the 1975 agreement was a refinancing requiring new disclosures. We disagree with both theories.

First of all, while the staff interpretations of Regulation Z do seem to draw a clear distinction between oral and written workout agreements, we find no support for such a conclusion in the provisions of either the Truth-in-Lending Act or Regulation Z, or, for that matter, in logic. Certainly, the opinion letters cited by Bastrop are entitled to great weight, *see Willis v. Town Finance Corp. of Atlanta*, 416 F.Supp. 10 (N.D.Ga. 1976), but we are not bound by them if it appears that they have incorrectly interpreted the law. We find appellees' argument equally unpersuasive. There is no evidence in the record tending to show that the maturity date of the 1973 loan was extended by the 1975 agreement. While the details are not crystal clear, it seems that the lump sum payment made in 1975 brought Farmer Frank up to date on his loan. It was agreed that thereafter he would merely resume the monthly payments that he had stopped making some months earlier. As we see it, the obligation Farmer Frank assumed with respect to the loan was to repay it over the same period of time and in the same installments as he had agreed to in 1973. There is no indication that a new repayment schedule was worked out whereby more time was given for repayment or terms were changed. The only new element in this arrangement was the attorneys' fees. By virtue of a clause in the 1973 agreement, the Tappins, upon default and turning over of the account to an attorney, became obligated to reimburse Bastrop for its legal expenses. Since Farmer Frank apparently was without the financial means to pay the fees immediately, it was agreed that he would repay the amount in monthly installments. There is no evidence that the unpaid principal and the attorneys' fees were added together, finance charges calculated on that amount, and a new schedule of payments agreed upon. The fact that the loan payments after the 1975 agreement were identical in amount to the pre-1975 payments makes any other conclusion

---

3.  *See* 12 C.F.R. § 226.4(b);  12 C.F.R. § 226.8(c).

4.  Even if we were to conclude that the 1975 agreement was a new transaction or refinanc-

ing, recission would still be in order since no disclosures whatsoever were made in connection with that agreement.

unrealistic. For the above reasons, we cannot conclude that the 1975 agreement amounted to a refinancing of the 1973 loan.

For the same reasons, however, we hold that disclosures were required with respect to the arrangement worked out for repayment of the attorneys' fees. At the time of the discussions in 1975 between Farmer Frank and Bastrop, there was no dispute concerning whether the Tappins were indebted to Bastrop in the amount of the attorneys' fees. The agreement allowing Farmer Frank to pay off the fees in monthly installments constituted a new extension of credit requiring disclosures under the Act. Bastrop's failure to make any disclosures whatsoever in connection with the attorneys' fees violated the Act. Thus, the Tappins are entitled to recission of the attorneys' fees agreement.

### III. Damages

■ Failure to comply with any provision of the Act subjects the lender to damages equal to "twice the amount of any finance charge in connection with the transaction." 15 U.S.C.A. § 1640(a)(2)(A)(i). Although the award in favor of Farmer Frank was based on the erroneous conclusion that the 1975 agreement was a refinancing, the amount awarded was correct. The finance charges on the attorneys' fees having been $52.12, the district court properly calculated statutory damages at $104.24. However, damages were awarded only to Farmer Frank because Ollie Tappin had not participated directly in the 1975 transaction. Since Ollie was a co-obligator on the original note and therefore liable for the attorneys' fees, we can only assume that all parties considered him a party to the 1975 agreement. There is no evidence in the record to the contrary, and, in addition, we note that appellants' reply brief concedes that their liability, if any, extends to both Farmer Frank and Ollie. Thus, on remand, the district court is directed to enter judgment in the amount of $104.24 for Ollie.

### IV. The Party's Obligations after Recission

■ As noted earlier, the district court properly ordered recission of the 1973 loan agreement. Now that it has been determined that Bastrop violated the Act, it must return to the Tappins any moneys or property received pursuant to the 1973 agreement and the attorneys' fees agreement. In addition, Bastrop must terminate any security interests it holds in the Tappins' property. Upon Bastrop's performance of its statutory duties, the Tappins will be obligated to return all the loan proceeds. See Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Sosa v. Fite, 498 F.2d 114, 118–119 (5th Cir. 1974). Since the district court held that the Tappins would not be required to return anything to Bastrop even after Bastrop performed its statutory duties, on remand the district court is directed to amend its order and judgment accordingly.

In summary: (1) we affirm the district court's judgment ordering recission of the 1973 loan agreement; (2) we hold that the 1975 agreement was not a refinancing; (3) we hold that Bastrop violated the Act by failing to make disclosures with respect to that part of the 1975 agreement pertaining to attorneys' fees, and, therefore, that the Tappins are entitled to recission of that separate agreement; (4) we affirm the award of damages to Farmer Frank; (5) we reverse the denial of damages to Ollie and direct the district court to enter judgment in his favor for $104.24; (6) we reverse that part of the district court's order relating to the obligations of the parties after recission and direct the court to amend its order and judgment in accordance with part IV of this opinion. The judgment of the district court is, in all other respects, affirmed.

AFFIRMED in part; REVERSED in part; and REMANDED in part with instructions.