**Carlena Stallworth BLAIR,**
**Plaintiff-Appellant,**

v.

**The NATIONAL CONSTRUCTION COMPANY OF THE SOUTH, INC. and Florida First National Bank of Pensacola,**
**Defendants-Appellees.**

**No. 78–1344.**

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1980.

Larry T. Menefee, Gregory B. Stein, Mobile, Ala., John L. Carroll, Morris S. Dees, Jr., Montgomery, Ala., for plaintiff-appellant.

I. David Cherniak, David P. Broome, Mobile, Ala., for Nat'l Const. Co. of the South, Inc.

M. J. Menge, Charles L. Hoffman, Jr., Pensacola, Fla., William W. Stoudenmire, Mobile, Ala., for Florida First Nat'l Bank at Pensacola.

Before TUTTLE, FAY and THOMAS CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This case is an appeal from a granting of the defendant's motion to dismiss in an action based on the Truth-in-Lending Act.[1] We reverse the trial court's dismissal of the complaint and remand for proceedings consistent with this opinion.

In May 1977 an agent of the National Construction Company of the South visited Mrs. Blair in her home and discussed with her various repairs and renovations to her home. After these discussions, she signed two contracts: one entitled "National Construction Company of the South, Inc. . . Retail Installment Contract" [Contract A] and another entitled "Retail Installment Contract and Note" [Contract B]. The two contracts described different materials and labor to be supplied and had different financing terms.[2] Included as part of the second contract was a $600.00 payment to Mrs. Blair "for extra work on home." As security for the work and loan, Mrs. Blair executed a mortgage on her property and signed a right of recision form. The second contract was subsequently assigned to the Florida First National Bank.[3]

Following a few days' work on the house, Mrs. Blair signed a "certificate of completion" and soon thereafter received a $600.00 check. In September, she wrote the appellees here informing them that the improvements had been done in an unworkmanlike manner constituting a breach of the contract. She demanded payment of sums to which she was entitled and cancellation of security interests. She then filed this action in federal district court, alleging violations of the Truth-in-Lending Act, the Alabama Consumer Fraud Act,[4] and the common law,[5] and seeking declaratory and injunctive relief as well as damages.[6]

1. 15 U.S.C. § 1601 et seq.

2. The cash price for Contract A was $5600—a down payment of $1600 with the rest to be paid in 60 monthly installments of $100.35. Total payments were listed as $5726.79. The cash price for Contract B was $3400, payable in 84 monthly installments of $72.89. Total payments were listed as $6122.76.

3. Why Mrs. Blair signed two contracts is not in the record. The second contract was identified in the corner as being from the Florida National Banks of Florida. The contractor was identified as the National Construction Company.

4. Title 5, Section 316 et seq., Code of Alabama 1940 (Supp.1973).

5. The common law claims included breach of the construction contract, fraud and deceit in the entering into of the contract, and inducing the defendant to execute an unconscionable contract.

6. Specifically, Mrs. Blair sought to compel the defendants to comply with the Alabama Consumer Finance Act, to prevent them from foreclosing on the mortgage or any liens or of suing to enforce the performance of the contract, and to rescind the contracts and other agreements pursuant to Title 5, Section 323, Code of Alabama 1940 (Supp.1973) with recovery of the finance charge, penalties, and attorney's fees provided for under that Act, in Title 5, Section 330. She also wanted a declaratory judgment that the contracts were unconscionable pursuant to the common law and Title 5, Section 327 Code of Alabama 1940 (Supp.1973); and that defendant National Construction Co. had failed to substantially perform its contract. Also sought were damages for fraud and deceit.

She also asked for a declaratory judgment that the acts and practices of the defendant violated the federal Truth-in-Lending Act, sought an injunction to prevent them from not complying with that law, and sought refunds

Once in federal court, the appellees moved to dismiss the suit on the grounds that the court did not have jurisdiction over this action and that the complaint failed to state a cause of action. The plaintiffs moved for partial summary judgment on one issue. The trial judge denied the motion for partial summary judgment and granted the defendants' motion to dismiss without an opinion.

The plaintiff alleged a violation of the Truth-in-Lending Act. Where such a violation was alleged, there was clearly federal court jurisdiction. Therefore the trial judge must have reasoned that the plaintiff had failed to state a cause of action under the Truth-in-Lending Act.

We therefore begin with the broad standard accorded motions under FRCP Rule 12(b)(6)—failure to state a claim upon which relief can be granted. We have held that the proper standard for such motions is that:

> [A] complaint is not subject to dismissal [for failure to state a claim] unless it appears to a certainty that *the plaintiff cannot possibly be entitled to relief under any set of facts which could be proven in support of its allegations.* Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted. [Emphasis in original]

*Stefanski v. Mainway Budget Plan, Inc.,* 456 F.2d 211, 212 (5th Cir. 1972), *citing Byrd v. Bates,* 220 F.2d 480, 482 (5th Cir. 1955).

The plaintiff suggested a number of ways in which she had stated a cause of action under the Truth-in-Lending Act. She argued that it is impermissible under the Act to combine the disclosure of the credit sale with the disclosure for a $600.00 consumer loan in one document. She also alleged that the Act was violated if she signed two contracts with their respective disclosures if only one represented the actual agreement that was made. Finally she urged that some of the disclosures in the first contract were inaccurate.

Without considering all of her claims here, we think she has certainly stated a valid cause of action sufficient to withstand a § 12(b)(6) motion to dismiss under the *Byrd v. Bates* standard. As to the contentions about the combination of the disclosures for the work on the house with those for the loan, Mrs. Blair has stated a cause of action. Section 1638,[7] concerning

---

and penalties under that Act pursuant to 15 U.S.C. § 1635 and 1640.

7. Section 1638 says in part:
(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:
(1) The cash price of the property or service purchased.
(2) The sum of any amounts credited as downpayment (including any trade-in).
(3) The difference between the amount referred to in paragraph (1) and the amount referred to in paragraph (2).
(4) All other charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge.
(5) The total amount to be financed (the sum of the amount described in paragraph (3) plus the amount described in paragraph (4)).
(6) Except in the case of a sale of a dwelling, the amount of the finance charge, which may in whole or in part be designated as a time-price differential or any similar term to the extent applicable.

(7) The finance charge expressed as an annual percentage rate except in the case of a finance charge.
(A) which does not exceed $5 and is applicable to an amount financed not exceeding $75, or
(B) which does not exceed $7.50 and is applicable to an amount financed exceeding $75.
A creditor may not divide a consumer credit sale into two or more sales to avoid the disclosure of an annual percentage rate pursuant to this paragraph.
(8) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness.
(9) The default, delinquency, or similar charges payable in the event of late payments.
(10) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

one type of credit sale, clearly contemplates a different sort of disclosure than § 1639 [8] dealing with consumer loans. The enforcement scheme of differentiating between credit sales and loans is carried forth in Regulation Z as promulgated by the Federal Reserve Board at 12 C.F.R. § 226.8 where subsection (c) lists the items to be disclosed in credit sales and subsection (d) lists the disclosures required for loans. The combining of these two sorts of transactions by the use of a single disclosure statement which does not clearly indicate that there was both a cash loan of $600 and a credit sale was a violation of the Act.[9] Allowing a creditor to combine these disclosures under the circumstances of this case would enable it to evade the technical requirements of the Act which this Court has held must be strictly complied with. *Cf. McGowan v. King, Inc.,* 569 F.2d 845, 848–49 (5th Cir. 1978); *Martin v. Commercial Securities Co., Inc.,* 539 F.2d 521, 525 (5th Cir. 1976). A combined disclosure of the two transactions does not provide "a meaningful disclosure of credit terms." See 15 U.S.C. § 1601. Such a truncated disclosure statement might easily confuse people uninformed in the complicated world of credit transactions. The inclusion of a $600 cash loan to Mrs. Blair under the designation "cash price" does not truly reflect the real transaction.

 Furthermore, in this case, Mrs. Blair might well have been confused by the fact that she was given two different contracts and thus two different disclosure statements for what may have been only one actual agreement to repair her house. The parties never had an opportunity to develop the facts surrounding the two contracts and how they related to the actual work done because the case was dismissed. Title 15 § 1631(a) requires that disclosures be made in a clear and conspicuous manner and Regulation Z at 12 C.F.R. § 226.8(a) requires that disclosures be made on the face of one document. There is certainly a possibility that given the chance, Mrs. Blair could show there was only one transaction and thus the giving of two different statements for it violated the Act. Mrs. Blair should have been permitted to proceed with her case in order to develop this theory.

 We therefore reverse the dismissal of the complaint and remand to the district court for proceedings consistent with this opinion.[10]

**REVERSED and REMANDED.**

8. Section 1639 says, in part:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

(4) Except in the case of a loan secured by a first lien on a dwelling and made to finance the purchase of that dwelling, the amount of the finance charge.

(5) The finance charge expressed as an annual percentage rate except in the case of a finance charge

(A) which does not exceed $5 and is applicable to an extension of consumer credit not exceeding $75, or
(B) which does not exceed $7.50 and is applicable to an extension of consumer credit exceeding $75.
A creditor may not divide an extension of credit into two or more transactions to avoid the disclosure of an annual percentage rate pursuant to this paragraph.

(6) The number, amount, and the due dates or periods of payments scheduled to repay the indebtedness.

(7) The default, delinquency, or similar charges payable in the event of late payments.

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

9. We do not need to decide whether every such combination, no matter how clearly described and disclosed, would be a violation.

10. The plaintiff also argued that she was entitled to attorney's fees. Consideration of that

84

---

issue at this point in the litigation would be premature. Title 15 U.S.C. § 1640(a)(3) provides that in any successful action to enforce liability under the Truth-in-Lending Act, the defendant is liable for a "reasonable attorney's fee." However, since the plaintiff has not prevailed on the merits, she cannot recover. *Cf.*

*McGowan v. Credit Center of North Jackson, Inc.,* 546 F.2d 73, 77 (5th Cir. 1977); *Sosa v. Fite,* 498 F.2d 114, 122 (5th Cir. 1974); *Thomas v. Myers-Dickson Furniture Company,* 479 F.2d 740, 748 (5th Cir. 1973).