**DILLARD DEPARTMENT STORES, INC., Appellant,**

v.

**Richard L. OWENS, Appellee.**

No. 13–96–074–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 21, 1997.

Rehearing Overruled Sept. 18, 1997.

Bruce L. Collins, III, Ellis & Prehn, William A. Abernethy, Carlos A. Mattioli, Meredith, Donnell & Abernethy, Corpus Christi, for Appellant.

L. Scott Smith, Law Office L. Scott Smith, Corpus Christi, for Appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Dillard Department Stores appeals from a judgment denying its claim against Richard Owens for payment of a charge card debt and awarding Owens attorney's fees. Dillard raises ten points of error complaining of the award of attorney's fees and, alternately, of the admission of improper evidence at trial. We affirm in part, and reverse and suggest remittitur in part.

Owens opened an account with Dillard in 1970 and received a charge card in his own name. Owens then married Davis on November 1, 1990. However, shortly thereafter, the couple separated, Davis moved to Kansas, and Owens filed for divorce in Nueces County, Texas, at the beginning of December 1990. While in Wichita, Kansas, Davis obtained from Dillard a temporary charge card on Owens' account on December 22, 1990. Between December 23, 1990, and December 28, 1990, Davis purchased some $5,000 worth of goods from Dillard on the charge card.

When Owens received the bill for Davis' purchases in January 1991, he protested by sending a letter of dispute to Dillard complaining that the charges were unauthorized. Dillard acknowledged the dispute and requested that Owens come into its Corpus Christi store, examine the receipts and sign an affidavit declaring that the purchases were fraudulently made. Owens did so. Dillard then contacted Davis, who informed Dillard of the marriage and said that the purchases had been authorized. Dillard then sent a letter to Owens on April 1, 1991, denying his assertions of fraud.

Dillard sued Owens and Davis to recover payment for Davis' purchases under theories of breach of contract, quantum meruit, implied contract, unjust enrichment, and community debt. Owens generally denied Dillard's petition and counterclaimed for a declaratory judgment that no contract exists with Dillard whereby he authorized Davis to charge purchases to his account, and that he is not liable for such charges. Owens alleged that he made a good faith attempt to resolve his disagreement with Dillard under the Federal Truth–in–Lending Act, 15 U.S.C. § 1666i. Finally, Owens requested attorney's fees from Dillard.

The case was tried to a jury on the uncontroverted facts set forth above. The jury rejected Dillard's theory that Owens authorized Davis to make purchases on his Dillard's charge card, or that Davis' purchases were for necessaries. The jury found that Owens made a good faith attempt to obtain satisfactory resolution of the disputed charges with Dillard, that Dillard did not send a written explanation or clarification to Owens after having conducted an investigation setting forth the reasons Dillard believes the account was correctly shown in the statement, and that Dillard should have deleted all of the disputed charges from Owens' account. The jury further found that reasonable and necessary attorney's fees for Owens' attorney were $10,000 for trial, $7,500 for appeal to the Court of Appeals, $3,500 for application for writ of error to the Texas Supreme Court, and $3,500 if the writ of error is granted.

The trial court rendered judgment that Dillard take nothing from Owens, and that Owens recover attorney's fees from Dillard in the amounts found by the jury. However, the trial court's judgment did not grant any declaratory relief in favor of Owens.

Dillard generally has not challenged the take-nothing judgment on its claims against

Owens. However, by nine points of error, Dillard complains of the trial court's award of attorney's fees to Owens.

By its first and second points of error, Dillard complains that, because declaratory relief was inappropriate and ultimately not awarded to Owens, the trial court erred in granting attorney's fees under the authority of the Uniform Declaratory Judgments Act. Owens concedes that the trial court granted no additional declaratory relief to him and that he has no claim for attorney's fees under the Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997); *see HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638 (Tex. App.—Austin 1992, writ denied) (party may not recover attorney's fees under the Uniform Declaratory Judgments Act if its counterclaim is no more than a mere denial of the plaintiff's cause of action). However, Owens claims that he is entitled to attorney's fees under the Federal Truth–in–Lending Act ("TILA"). 15 U.S.C. § 1601 *et seq.*

By its third through seventh points of error, Dillard complains that TILA likewise does not support an award of attorney's fees to Owens, because he asserted no affirmative claim for relief under the Act, nor was he awarded damages for a violation thereof.

■ The Truth–in–Lending Act generally regulates specified aspects of consumer credit and billing practices. Its overall purpose is "to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475, 477 (5th Cir.1995). Accordingly, TILA is enforced strictly against creditors and construed liberally in favor of the consumer. *Fairley*, 65 F.3d at 482; *Thomas v. Myers–Dickson Furniture Co.*, 479 F.2d 740, 748 (5th Cir.1973).

The provision of TILA dealing with civil liability states generally that "any creditor who fails to comply with any requirement imposed under [specified parts of the Act] with respect to any person is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of the failure; (2) [statutory penalties]; (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court;...." 15 U.S.C. § 1640(a).

In the present case, if Dillard, as creditor, failed to comply with a provision of TILA in its attempt to collect the asserted credit card debt against Owens, and if Owens was successful in an action to enforce liability against Dillard for such noncompliance, then Owens also has a right to reasonable attorney's fees. Our first question is whether Dillard breached any duty to Owens under TILA for which Owens could hold it liable.

The responsibilities of creditor and debtor under the TILA with regard to billing disputes are generally set forth in section 1666, which requires the debtor to initiate written notice of any billing error. The creditor must then acknowledge the disputed charge and either correct it or "send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. ...." 15 U.S.C. 1666(a)(B)(ii). The creditor's failure to comply with these requirements causes him to forfeit the right to collect the disputed amounts up to $50.00. 15 U.S.C. 1666(e). Section 1666i generally preserves the claims and defenses of the debtor against the creditor arising out of a credit card transaction, if the debtor has, among other things, "made a good faith attempt to obtain satisfactory resolution of a disagreement or problem relative to the transaction from the person honoring the credit card." 15 U.S.C. 1666i(a).

The jury findings in the present case show that, while Owens complied with section 1666i by making a good faith attempt to obtain a satisfactory resolution of the billing error, Dillard did not comply with the requirement of section 1666(a)(B)(ii) concerning a written explanation or clarification setting

forth the reasons the account was correctly shown.

By its sixth point or error, Dillard challenges the legal and factual sufficiency of the evidence to support the jury's finding that it violated this requirement. In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). *See also* Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 TEX. L.REV. 361 (1960).

It is undisputed that Dillard sent its April 1, 1991, letter to Owens asserting his liability for the debt in the following terms:

> We are in receipt of a fraud affidavit in [sic] which you completed. However, after research and investigation, we find that you and Dianna McKay Owens were legally married at the time the purchases in question were made. For this reason, we are unable to process your request as fraud. We feel this should be handled as a civil matter.

We conclude that the letter itself demonstrates Dillard's failure to comply with the requirements of TILA concerning a satisfactory explanation for why it continued to hold Owens liable for Davis' purchases. Although Dillard did mention Owens' marriage to Davis as an impediment to "processing" his fraud claim, this ambiguous and conclusory statement offers no justification as to the basis on which Dillard asserted that Owens remained liable for such purchases. Dillard's theory at trial, that the purchases were for "necessaries" which one spouse is obliged to provide to the other, was never mentioned in the letter or investigated beyond merely a cursory review of the items purchased. Accordingly, the letter and surrounding circumstances offered legally and factually sufficient evidence that Dillard violated this provision of TILA. We overrule Dillard's sixth point of error.

However, in order for Owens to be entitled to attorney's fees, we must further find under section 1640(a)(3) that Owens was successful in an action to enforce liability against Dillard for its noncompliance with TILA.

Although Owens recovered no actual damage award against Dillard, he did successfully defeat Dillard's claim against him for Davis' unauthorized use of the charge card. Moreover, Dillard's violation of TILA played a substantial part in its attempt to recover the improper charges against Owens. Had Dillard attempted to comply with TILA by stating its full theory of liability in a proper written explanation to Owens, it is likely that the futility of its attempt to enforce the debt against him would have become obvious at that time, and both parties could have avoided the time and expense of the present proceedings.

The purpose of the protections afforded a consumer under section 1666 is not, after all, to change the substantive law with regard to his liability for the underlying debt, but to protect him from the intimidating process of bargaining over a disputed debt with a creditor in a superior bargaining position. Without such protections, the creditor may use that bargaining power to encourage payment of even an illegitimate debt by threatening to force the consumer to expend substantial time and money to protect his rights. The fact that the creditor ultimately loses his claim in court does not diminish the expense to the consumer of protecting his rights, unless that consumer either brings an affirmative claim for the statutory penalties and/or collects attorney's fees and costs for his defense.

In another context, the Fifth Circuit has recognized the dilemma that a consumer faces in trying to enforce the provisions of TILA, under which Congress had intended to create "a system of 'private attorney generals' who will be able to aid the effective enforcement of the Act." *Sosa v. Fite*, 498 F.2d 114, 121 (5th Cir.1974) (quoting *Thomas*, 479 F.2d at 748). Accordingly, the *Sosa* court allowed attorney's fees to a debtor who successfully sued to rescind a consumer credit transaction under section 1635 of the Act, even though the debtor's action did not fall within the literal application of section 1640 at that time. So long as the action "vindicates congressional policy," the *Sosa* court concluded that it was within the trial court's

discretion to award attorney's fees to the successful debtor. *Sosa*, 498 F.2d at 121; *see also Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir.1996) (plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover the statutory damages and attorney's fees); *but see Rachbach v. Cogswell*, 547 F.2d 502, 506 (10th Cir.1976) (criticizing *Sosa* for failing to follow the "American Rule" that attorney's fees are not ordinarily recoverable in the absence of statutory authorization).

The same policy considerations expressed by the *Sosa* court justify allowing attorney's fees to the consumer who successfully defends an action by a creditor who has violated TILA by its improper attempts to collect the underlying debt. Had Dillard complied with TILA and properly handled the present dispute, it likely would have been resolved much earlier in Owens' favor and he would not have had to spend a significant amount of money defending his rights before the trial court and now this Court. One obvious purpose of TILA is to simplify the resolution of disputes and to place the consumer on a more equal footing in the resolution of such disputes. When the creditor fails to follow TILA procedures, he encourages misunderstandings, a lack of communication, and ultimately litigation. The costs of such litigation should not fall on the innocent consumer, but on the creditor who has failed to comply with TILA.

We conclude that the trial court had authority to award attorney's fees to Owens under TILA. Accordingly, we overrule Dillard's first seven points of error.

By its eighth and ninth points of error, Dillard complains that the amount of attorney's fees awarded to Owens was excessive and unsupported by legally or factually sufficient evidence.

■ Generally, when substantive federal claims, defenses or rights are raised in state court, state law and rules still govern the manner in which the federal questions are tried and proved. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992). Accordingly, although Owens' claim for attorney's fees may arise under federal substantive law, the process of proving and awarding such damages is controlled by Texas procedure and rules of proof generally with regard to attorney's fees.

■ Texas law generally requires an award for attorney's fees to be based on sufficient evidence presented at trial to support the amount awarded. *Valley Coca–Cola Bottling Co. v. Molina*, 818 S.W.2d 146, 149 (Tex.App.—Corpus Christi 1991, writ denied); *cf.* TEX. CIV. PRAC. & REM.CODE ANN. § 38.004 (Vernon 1997) (providing for judicial notice of reasonable and customary attorney's fees awarded under that statute in certain limited circumstances).

In the present case, attorney John Warren testified as an expert witness for Owens to usual hourly rates of between $100 and $175 for consumer law cases in Nueces County, Texas. He also testified to a reasonable and necessary number of hours between 100 and 130 to represent Owens on the entire case at trial. However, Warren testified that $7,500 (50 hours at $150 per hour) would be a reasonable and necessary fee for prosecution of the counterclaim alone through trial. Finally, Warren testified that a fee of between $4,000 and $5,000 would be reasonable for appeal to the court of appeals, between $2,500 and $3,000 for application for writ of error to the Supreme Court of Texas, and an additional $2,500 to $3,000 to argue the case before the Supreme Court of Texas.

The jury assessed reasonable and necessary attorney's fees for Owens at $10,000 for trial, $7,500 for appeal to the Court of Appeals, $3,500 for application for writ of error to the Texas Supreme Court, and $3,500 if the writ of error is granted, and the trial court granted judgment for those amounts.

■ Dillard initially complains that the award of attorney's fees for trial of the case should have been limited to the $7,500 that Warren estimated with regard to prosecuting the counterclaim. However, Warren's testimony supports higher attorney's fees of $10,-000 for both prosecution of the counterclaim and defense against Dillard's claim. As our analysis of Owens' substantive right to attorney's fees under section 1640 of the Truth–

in–Lending Act shows, he is entitled to such fees not only in relation to the counterclaim, but also to compensate him for the costs of defending against Dillard's illegitimate claim for payment.

However, with regard to appellate attorney's fees, we agree with Dillard that the amounts awarded to Owens clearly exceed the upper amounts to which Warren testified. Accordingly, we will suggest a remittitur of the excess amounts awarded. *See Valley Coca–Cola,* 818 S.W.2d at 149. We overrule in part, and sustain in part, Dillard's eighth and ninth points of error.

By its tenth point of error, Dillard complains that the trial court erred in admitting evidence of Federal Trade Commission charges made against Dillard.

Owens offered at trial a September 21, 1994, press release published in the "FTC News" alleging that:

> Dillard Department Stores, Inc. has been charged by the Federal Trade Commission with violating federal law by making it unreasonably difficult for consumers to remove unauthorized charges from their Dillard's charge-card bills. For example, the FTC alleged, Dillard's has forced customers who claim unauthorized charges to file notarized affidavits and agree to testify against the purported unauthorized user in court. Dillard's also allegedly treats payment for questioned charges as a waiver of a cardholder's claim that the charges were unauthorized, and holds cardholders liable for charges by their spouses, even when the charges were unauthorized and applicable state law does not impose liability, the FTC charged.

Dillard made numerous objections to the press release, based among other things on hearsay, relevance, prejudice, improper attack on character, and failure to authenticate. The trial court overruled Dillard's objections and allowed the press release into evidence.

Whether or not this press release was properly entered into evidence, we do not believe that its erroneous admission would require a new trial. Dillard generally admitted at trial to the course of conduct outlined in the press release as it applied to Dillard's

dealings with Owens. Moreover, the questions presented to the jury required them to determine whether that conduct, and particularly Dillard's handling of Owens' billing dispute, satisfied the requirements of TILA § 1666 with regard to the investigation and explanation of charges, matters which the FTC press release did not address.

■ We conclude that the admission of the press release was not reasonably calculated to cause, nor did it probably cause, the rendition of an improper judgment. *See* Tex. R.App. P. 81(b)(1). We overrule Dillard's tenth point of error.

With regard to the award of attorney's fees generally, we AFFIRM the judgment of the trial court. However, with regard to appellate attorney's fees, we suggest that, within thirty days of this opinion, Owens file a REMITTITUR in this Court decreasing his award of appellate attorney's fees to $5,000 for his appeal to this Court, and $3,000 each for an application for writ and argument before the Texas Supreme Court. If Owens files such a remittitur, we will reform the judgment and AFFIRM. Otherwise, we will REVERSE and REMAND this cause for a redetermination of appellate attorney's fees.