# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00147-CV

**Carolyn Barnes, Appellant**

**v.**

**University Federal Credit Union and**
**Government Employees Insurance Company/GEICO Insurance, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-05-003010, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is the second appeal in this suit filed by appellant Carolyn Barnes, plaintiff in the underlying proceeding, against appellees University Federal Credit Union (UFCU) and Government Employees Insurance Company (GEICO). In our prior opinion, we affirmed the trial court's severance order and partial summary judgment in favor of UFCU and GEICO. Barnes's remaining claims and UFCU's counterclaims proceeded to a jury trial. Barnes appeals from a final judgment, consistent with the jury's findings, denying her breach of contract and Deceptive Trade Practices Act (DTPA) claims and awarding UFCU damages and attorneys' fees. For the reasons set forth below, we affirm the judgment conditioned on UFCU filing a remittitur reducing its award of attorneys' fees for this appeal to $15,000.

**BACKGROUND**

The factual and procedural background of this case is fully set forth in our prior opinion. *See Barnes v. University Fed. Credit Union*, No. 03-09-00003-CV, 2010 WL 2133946 (Tex. App.—Austin May 27, 2010, no pet.) (mem. op.). Generally stated, however, Barnes obtained two loans from UFCU for $14,066 using two personal vehicles as collateral. The loan agreements required Barnes to obtain comprehensive and collision insurance coverage. After sending Barnes numerous letters requesting a copy of the required insurance and not receiving the requested proof, UFCU issued collateral protection insurance (CPI) and added the $1,600 premium to the loan balance. On August 25, 2005, Barnes filed suit against UFCU and GEICO, her insurance carrier, pleading numerous causes of action, including breach of contract against UFCU and DTPA claims against GEICO—alleging that GEICO had misled her regarding the scope of her coverage.

On April 5, 2006, UFCU sent Barnes a settlement proposal stating that in return for $8,000, UFCU would consider the relevant loans to be paid in full, release the liens on her vehicles, and forego collection of any late fees, penalties, interest, or attorneys' fees. The proposal further states, "UFCU and Barnes will execute reasonable and mutually agreeable full releases and other settlement documentation necessary to fully resolve and dismiss the current proceedings." The letter contained a signature line for Barnes to sign acknowledging that she "agreed and accepted" the agreement. Barnes did not sign. Rather, she sent UFCU a cashier's check for $8,000 accompanied by a letter dated April 11, 2006, stating, "I am in receipt of your extortion demand with threats of additional economic and financial terrorism if I do not comply with your demands. This ransom and extortion money is being paid under extreme economic and financial duress and not because it is due and owing." The letter goes on to state that the funds were being tendered "with all rights reserved"

2

and asserting claims of over $400,000 against UFCU in damages and attorneys' fees. UFCU sent notice that it would not accept Barnes's check unless she signed a release of all claims. Barnes did not sign a release, and UFCU declined to negotiate the $8,000 check. Barnes filed UFCU's letter with the trial court as a Rule 11 agreement and amended her pleadings to add an additional breach of contract claim against UFCU, alleging that UFCU had breached the parties' Rule 11 agreement by proceeding with litigation after receiving her cashier's check for $8,000.

Eventually, all parties moved for summary judgment. The trial court granted summary judgment in favor of UFCU and GEICO on all of Barnes's claims except for her two breach of contract claims against UFCU—one claim arising from the loan agreement and the other from the alleged Rule 11 agreement—and her DTPA claims against GEICO. Prior to GEICO's filing a motion to sever the causes of action that had been decided on summary judgment, Barnes filed supplemental pleadings adding new causes of action, including claims for breach of fiduciary duty and breach of fair debt collection laws against UFCU ("supplemental claims"). The trial court entered an order of severance, severing out those causes of action that had already been decided and ordering Barnes to proceed only with her two breach of contract claims against UFCU and her DTPA claims against GEICO. On appeal, we affirmed the summary judgment and order of severance.

Barnes's remaining claims, as well as UFCU's counterclaims, proceeded to a jury trial. In addition, the trial court allowed her to proceed with her supplemental fair debt collection claim against UFCU. The jury found that Barnes breached her loan agreements with UFCU, UFCU did not breach the loan agreements, and Barnes's breach was unexcused by her affirmative defenses. The jury awarded UFCU damages of $11,022.33 and attorneys' fees of $35,000 for preparation and trial, $25,000 for an appeal to the court of appeals, and $15,000 for an appeal to the Supreme Court

3

of Texas. The jury further found against Barnes on her breach of contract claim arising from the alleged Rule 11 agreement, finding that the parties had not entered into an enforceable settlement agreement and against her DTPA claims against GEICO. But the jury did find in favor of Barnes on her fair debt collection claim against UFCU and awarded her $1,049.96 in damages and $35,000 in attorneys' fees.[1] The trial court entered final judgment in accordance with the jury's findings.

In five issues on appeal, Barnes argues the trial court erred by: (1) improperly severing her supplemental claims and not submitting jury questions for those claims, (2) not enforcing the alleged Rule 11 agreement as a matter of law, (3) assessing discovery sanctions against her in the amount of $500, (4) granting summary judgment in favor of GEICO and UFCU, and (5) depriving her of her right to a fair trial due to numerous complaints, including improper jury argument, improper comment on the evidence, violation of the motion in limine, discovery abuse, and insufficient evidence to support the jury's findings.

## ORDER OF SEVERANCE

In her first issue on appeal, Barnes argues the trial court erred by (1) improperly severing her supplemental claims and (2) refusing to submit those claims to the jury. UFCU contends that this Court has already determined and rejected Barnes's argument in her prior appeal, and even if we choose to revisit the issue, Barnes failed to preserve error by requesting jury questions for her supplemental claims. We agree with UFCU that we already addressed the propriety of the severance order in our prior opinion. With regard to the jury charge, we conclude the trial court submitted all grounds of recovery supported by the evidence and properly requested by counsel.

---

[1] UFCU does not appeal the jury's finding on Barnes's fair debt collection claim or the award of damages and attorneys' fees.

In her prior appeal before this Court, Barnes argued that the trial court's severance order improperly severed her supplemental claims. We concluded that, even if the order improperly severed claims that had not been resolved on summary judgment, the issue was remedied because the trial court permitted Barnes to proceed at trial on claims that were raised for the first time after the summary judgment order. Indeed, Barnes obtained a favorable jury verdict on her supplemental fair debt collection claim. "Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716-17 (Tex. 2003). Barnes has not presented new facts, legal analysis, or argument that would change the disposition of this issue. Accordingly, the law of the case doctrine bars its reconsideration.

With regard to the trial court's submission of Barnes's supplemental claims to the jury, the trial court did submit—as previously noted—a jury question on Barnes's supplemental fair debt collection claim. For Barnes's remaining supplemental claims, she only requested and obtained a ruling on her supplemental claim for breach of fiduciary duty against UFCU. Trial courts are required "to submit requested questions to the jury if the pleadings and any evidence support them." *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *see also* Tex. R. Civ. P. 278. But a fiduciary relationship does not usually exist between a borrower and lender, and we cannot conclude the evidence supported a claim against UFCU for breach of fiduciary duty. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1963) (debtor-creditor relationship alone insufficient to create fiduciary relationship); *see also Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

When Texas courts have found a fiduciary relationship between a borrower and creditor, "the findings have rested on extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities." *Bank One, Texas, N.A.*, 967 S.W.2d at 442. Upon review of the record, we cannot find—nor does Barnes identify in her brief—evidence of extraneous facts or conduct by UFCU creating a fiduciary relationship. Further, because Barnes had never done business at UFCU before, there is no evidence of a long-standing relationship of trust that might create a fiduciary relationship. *See Thigpen*, 363 S.W.2d at 253; *Fleming v. Texas Coastal Bank of Pasadena*, 67 S.W.3d 459, 461 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). As there was not sufficient evidence to support a breach of fiduciary duty claim, we conclude the trial court did not abuse its discretion by omitting the requested ground of recovery from the jury charge.

We further conclude that Barnes has waived error as to all other supplemental claims. During a discussion of the supplemental claims at pretrial conference, Barnes's counsel expressly advised the trial court that the only supplemental claim her client would pursue at trial was the fair debt collection claim based on UFCU improperly reporting Barnes's debt: "I'm just submitting a jury issue about the unfair debt reporting." At the charge conference, Barnes's counsel additionally sought a jury question on the breach of fiduciary duty claim. But Barnes did not timely request in writing a jury question for any other supplemental claim.[2] *See* Tex. R. Civ. P. 278. Further, Barnes's

---

[2] The record reflects Barnes filed proposed jury questions for some supplemental claims a month after the jury returned its verdict but did not obtain a ruling on these untimely requests. *See* Tex. R. Civ. P. 278 ("Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment . . . ."); *Moffett v. Goodyear Tire & Rubber Co.*, 652 S.W.2d 609, 612 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (without indication in record that requested jury question was presented and refused by trial court no error is preserved despite requested issues inclusion in record).

brief does not contain a clear argument as to how she established any other supplemental claim or appropriate citations to legal authority and the record to support such claims. *See* Tex. R. App. P. 38.1(I). On appeal, all independent grounds of recovery "not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279. Because Barnes failed to request jury questions on any other supplemental claims and has not conclusively established those claims under the evidence, we conclude she has waived error.

## ALLEGED RULE 11 AGREEMENT

Barnes also argues the trial court erred in denying her motions for directed verdict, judgment notwithstanding the verdict, and new trial because she established as a matter of law: (1) her breach of contract claim against UFCU arising from the alleged Rule 11 agreement, or in the alternative, (2) her affirmative defense of accord and satisfaction to UFCU's breach of contract claim arising from the loan agreement.[3] Barnes's argument is twofold: first, she argues her $8,000 cashier's check and accompanying letter, tendered in response to UFCU's settlement proposal, constituted a valid acceptance of UFCU's offer creating an enforceable settlement agreement.[4]

---

[3] Barnes also argues on appeal that the trial court erred by denying her three motions for summary judgment seeking enforcement of the alleged Rule 11 agreement. Where a motion for summary judgment is denied by the trial court and tried on its merits, the order denying the motion for summary judgment is not reviewable on appeal. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Nuby v. Allied Bankers Life Ins. Co.*, 797 S.W.2d 396, 397 (Tex. App.—Austin 1990, no writ).

[4] Texas Rule of Civil Procedure 11 requires all agreements between parties touching any pending suit to be in writing, signed, and filed as part of the record. With her summary judgment motion seeking enforcement of the alleged Rule 11 agreement, Barnes attached UFCU's settlement proposal letter signed by an attorney for UFCU, her signed responding letter, and a copy of the $8,000 cashier's check signed by a representative of the issuing bank. A series of letters between parties may constitute a written settlement agreement enforceable under Rule 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995).

7

The jury disagreed, finding that Barnes and UFCU did not enter into an enforceable settlement agreement. In the alternative, Barnes argues she established the affirmative defense of accord and satisfaction to UFCU's breach of contract claim arising from the loan agreement. Specifically, she argues her tender of the $8,000 cashier's check and accompanying letter constituted a new agreement between the parties that should operate as an accord and satisfaction, thereby discharging her obligations under the original loan contract. The jury again disagreed, finding Barnes breached the loan agreement and did not meet her burden of proof for the affirmative defense of accord and satisfaction.

*Standard of Review*

The substance of Barnes's argument is a challenge to the legal sufficiency of the jury's findings.[5] *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Barnes had the burden of proof both on her breach of contract claim against UFCU arising from the alleged Rule 11 agreement and on her affirmative defense of accord and satisfaction. When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must

---

[5] Barnes also challenges the factual sufficiency of the jury's findings but failed to preserve error in her motion for new trial by adequately apprising the trial court of the alleged deficiency. *See* Tex. R. Civ. P. 324(b). A point in a motion for new trial is a prerequisite to complain on appeal that the evidence is factually insufficient to support a jury finding. *Id.* Embedded within a point in her motion for new trial discussing deliberations and titled "Jury Misconduct," Barnes generally alleges that she established as a matter of law an accord and satisfaction "and, in any event, any opposite findings would be contrary to the great weight and preponderance of the evidence." In over thirty-five pages of argument, Barnes provides no further support, authority, or evidence to apprise the trial court that she was challenging the factual sufficiency of any jury findings. We conclude that Barnes's argument did not clearly identify that she was challenging the factual sufficiency of the jury's findings, nor was she specific enough to give the trial court proper notice of the matter at issue; she has thus failed to preserve error. Tex. R. Civ. P. 321 (each point relied upon in motion for new trial shall refer to complained of error in such a way that objection can be clearly identified and understood by the court).

demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. *Sterner*, 767 S.W.2d at 690. First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. *Id.* Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.* The point of error will be sustained only if the contrary proposition is conclusively established. *Dow Chemical Co.*, 46 S.W.3d at 241.

*Settlement Agreement*

Reviewing the evidence supporting the jury's finding that the parties did not enter an enforceable settlement agreement, we conclude Barnes did not establish as a matter of law the existence of a valid settlement agreement with UFCU. A settlement is a contract, and its construction is governed by legal principles applicable to contracts generally. *Rodriguez v. Villarreal*, 314 S.W.3d 636, 641 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Like all contracts, a settlement requires an offer, an acceptance, and a meeting of the minds. *See Killeen v. Lighthouse Elec. Contractors*, 248 S.W.3d 343, 349 (Tex. App.—San Antonio 2007, pet. denied).

UFCU's letter to Barnes dated April 5, 2006 proposed settlement under the following terms: (1) Barnes would pay UFCU $8,000 via cashier's check or other certified funds before April 13, 2006; (2) upon receipt of the settlement amount, UFCU would release the liens it possessed

9

on Barnes's vehicles; (3) all parties would pay their own court costs, interest, attorney's fees and other costs; (4) UFCU would consider the loans paid in full; and (4) UFCU and Barnes would execute reasonable and mutually agreeable full releases and other settlement documentation necessary to fully resolve and dismiss the current proceedings.

While Barnes contends that she consented to the proposed settlement agreement by providing UFCU with a cashier's check in the proposed settlement amount, Barnes failed to sign the settlement proposal acknowledging that she "agreed and accepted" the settlement terms. Moreover, the cashier's check was sent with an accompanying letter stating that it was tendered "under extreme economic duress, under protest, and with all rights reserved" and asserting claims of over $400,000 against UFCU in damages and attorneys' fees. We conclude this is some evidence that Barnes did not accept UFCU's proposal to fully settle the dispute and resolve the pending proceedings. *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968) (well settled that if an acceptance changes or qualifies the terms of the offer, the offer is rejected); *see also King v. Bishop*, 879 S.W.2d 222, 223-24 (Tex. App.—Houston [14th Dist.] 1994, no writ) (economic duress may be grounds to set aside a settlement agreement). As such, our inquiry with regard to this issue need go no further.

*Accord and Satisfaction*

We further conclude that Barnes did not establish as a matter of law her affirmative defense of accord and satisfaction. An accord and satisfaction exists when parties agree to discharge an existing obligation in a manner other than in accordance with the terms of their original

10

contract. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969). The doctrine of accord and satisfaction is based upon the creation of a new contract, express or implied, by which the parties specifically and intentionally agree to the discharge of one of the parties' existing obligations in a manner otherwise than originally agreed. *Id.*; *Pate v. McClain*, 769 S.W.2d 356, 361-62 (Tex. App.—Beaumont 1989, writ denied).

To prevail on appeal, Barnes must demonstrate that the evidence establishes as a matter of law: (1) she in good faith tendered the cashier's check to UFCU as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, (3) UFCU obtained payment of the instrument, and (4) the check or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered in full satisfaction of the claim. Tex. Bus. & Com. Code Ann. § 3.311(a) & (b) (West 2002 & Supp. 2012) (Texas Uniform Commercial Code provision governing accord and satisfaction by use of negotiable instrument).[6] If these elements are proven, the claim is discharged, subject to two exceptions inapplicable to this case. *See id.* § 3.311(b) & (c).

We cannot conclude that Barnes established as a matter of law that UFCU obtained payment of the cashier's check. Reviewing the evidence in support of the jury's verdict, UFCU

---

[6] The cashier's check at issue is a negotiable instrument to which the Texas Uniform Commercial Code ("Code") applies. *See* Tex. Bus. & Com. Code Ann. § 3.104(a) (West 2002 & Supp. 2012). Because Section 3.311 of the Code—governing accord and satisfaction by use of a negotiable instrument—does not conflict with the common law doctrine of accord and satisfaction, we may use common law principles of accord and satisfaction to supplement the Code's provisions. *See Milton M. Cooke Co. v. First Bank and Trust*, 290 S.W.3d 297, 304 (Tex. App.—Houston [1st Dist.] 2009, no pet.); Tex. Bus. & Com. Code Ann. § 1.103(b) (West 2009 & Supp. 2012).

retained but declined to negotiate the check for approximately six months until Barnes obtained a refund from the issuing bank.[7] Upon receipt of the check, UFCU immediately mailed Barnes a letter stating UFCU "cannot accept/negotiate your check or proceed" until all of the settlement terms are agreed to, including agreement to execute a full release "allowing this matter to be fully and completely resolved." Barnes never signed the settlement proposal or a release. During the six months UFCU retained the check, it sent Barnes three more letters urging her to assent to the terms of the settlement agreement—to no avail.[8] Barnes admitted at trial that she never asked UFCU to return the check.

Our sister courts have found that the retention of a cashier's check for an unreasonable length of time is the equivalent of an acceptance of the accord and satisfaction as a matter of law. *See Tarrant Wholesale Drug Co. v. Kendall*, 223 S.W.2d 964, 966-67 (Tex. Civ. App.—San Antonio 1949, no writ) ("[F]ailure to return a [cashier's] check tendered in settlement of a disputed claim within a reasonable time, must be regarded in law as an acceptance of the compromise offer."); *Willis v. City Nat'l Bank of Galveston*, 280 S.W. 270, 273 (Tex. Civ. App.—Galveston 1926, writ ref'd) (holding long-continued retention of cashier's check "without

[7] The date of the refund is not revealed by the record, but the parties agree UFCU retained the check for at least six months. Barnes testified that she obtained a refund by filling out a lost cashier's check form with the issuing bank.

[8] The UFCU letters responding to Barnes's tender are dated April 14, 2006; April 18, 2006; June 13, 2006; and July 7, 2006. Barnes complains on appeal the trial court committed fundamental error by admitting the letters into evidence, which she describes as "self-serving post-breach legal opinions and completely irrelevant as to the formation of the contract." As the letters were relevant to proving or disproving the existence of a settlement agreement and Barnes's breach of contract claim, the trial court did not abuse its discretion.

in any way indicating its refusal to accept the terms of the settlement" constituted acceptance of accord and satisfaction as a matter of law). But what is an unreasonable amount of time to retain a check depends on the circumstances of the case. *See Curran v. Bray Wood Heel Co., Inc.*, 68 A.2d 712, 718 (Vt. 1949) ("The cases recognize that what is a reasonable time depends upon the circumstances of each case."); 35 Am. Jur.2d *Proof of Facts* § 735 (2013) ("Many courts have held that a creditor's retention for an unreasonable length of time of a check tendered in full payment of a debt, without cashing or making affirmative use of the check constitutes acceptance of the check. . . . The question whether a particular period of time is unreasonable depends on the circumstances of the individual case.").

We cannot conclude, based on the record before us, that UFCU's retention of the check was for an unreasonable length of time as a matter of law when: (1) UFCU immediately repudiated the offered accord, (2) UFCU informed Barnes it could not negotiate the check until a full settlement could be reached, (3) Barnes acquiesced to UFCU's retention of the check and did not request the check be returned, and (4) there were continued settlement negotiations between the parties. *See Kelly v. Kowalsky*, 442 A.2d 1355, 1357 (Conn. 1982) ("When creditor immediately and fully explains the grounds for his retention of a conditional check, and when a debtor acquiesces in that retention, there is no policy reason to support a finding that a creditor has agreed to an offer of accord which he has expressly rejected."); *American Nat'l Bank v. Bradford*, 188 S.W.2d 971, 978-79 (Tenn. App. 1945) (when "the parties continue to negotiate to reach an agreement to compromise the claim, it can hardly be said that the offeree must at the same time elect to accept or refuse the check, or that his holding it during such negotiations is unreasonable"). We hold that,

13

under the particular circumstances of this case, whether UFCU retained the check for an unreasonable length of time presented a fact issue for the jury, and the evidence before the jury permitted it to find that there was no basis upon which to base an accord and satisfaction. *See* 35 Am. Jur.2d *Proof of Facts* § 735 (2013) ("The reasonableness of the period of retention is ordinarily a question for the jury.").

Even if we were to conclude that UFCU's retention of the cashier's check was an implied acceptance, we cannot conclude that Barnes established as a matter of law that the check or her accompanying letter "contained a conspicuous statement to the effect that the instrument was tendered in full satisfaction of the claim." Tex. Bus. & Com. Code Ann. § 3.311(b). At the time Barnes tendered the check, there were numerous claims and counterclaims[9] between the parties and there is no notation on the check as to what claims Barnes intended to settle by tendering the funds or that the payment was tendered in full satisfaction of any claim. Further, the letter accompanying the check did not explicitly state in clear and unmistakable terms that it was in full satisfaction of any or all claims. Rather, Barnes tendered the funds with "all rights reserved" and stated that the amount due should be offset by over $400,000 in damages and attorneys' fees.

When the creditor's assent to the creation of a new contract must be implied, as in this case, "the facts proved must irresistibly point to such conclusion." *Jenkins*, 449 S.W.2d at 455.

---

[9] Barnes had pending claims against UFCU for fraud in the inducement, DTPA violations, breach of contract, fraud, negligence, defamation, intentional infliction of emotional distress, invasion of privacy, malice, and unconscionable contract of adhesion. UFCU had multiple counterclaims pending against Barnes, including breach of contract, quantum meruit, unjust enrichment, and conversion. Both parties sought to recover attorneys' fees.

14

There must be "an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation." *Id*. The "statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation." *Id*. "The condition that the tender is in full settlement must be brought home to the creditor." *Roylex, Inc. v. S & B Eng'rs, Inc.*, 592 S.W.2d 59, 60 (Tex. Civ. App.—Texarkana 1979, no writ).

We do not believe that Barnes's letter accompanying the cashier's check is so clear, full, and explicit that it is not susceptible of any interpretation other than that it was in full satisfaction of all pending claims. *George Linskie Co. v. Miller-Picking Corp.*, 463 S.W.2d 170, 173 (Tex. 1971) (holding no accord and satisfaction as a matter of law when debtor "did not make known in clear and unmistakable terms that the tender . . . would constitute full satisfaction of all pending claims"). Barnes's tender of the funds "with all rights reserved" while continuing to claim additional damages is itself unclear as to what claims are settled by the accord, and the accord is susceptible to multiple interpretations as to what claims were discharged. *See id.*

At best, any inferences to be drawn from the letter presented issues of fact properly submitted to the jury. *See Jenkins*, 449 S.W.2d at 456 (holding whether payments by contractor to subcontractor carried unequivocal notice that payments were tendered in full satisfaction of all claims was question of fact when numerous amounts were disputed and alleged accord was susceptible to multiple interpretations); *Flowers v. Diamond Shamrock Corp.*, 693 F.2d 1146, 1153 (5th Cir. 1982) ("At most, any inferences to be drawn from the letter concerning . . . an accord and satisfaction, were factual issues to be determined by the jury."); *see also George Linskie Co.*,

15

463 S.W.2d at 172 (holding no accord and satisfaction as a matter of law when letter accompanying tender was susceptible of multiple interpretations); *Call of Houston, Inc. v. Mulvey*, 343 S.W.2d 522, 525 (Tex. Civ. App.—Houston 1961, no writ) (holding whether parties mutually intended to enter accord and satisfaction presented issue of fact when recital on check could have been misunderstood by creditor).  Based on the foregoing, we cannot conclude that Barnes established her affirmative defense of accord and satisfaction as a matter of law.[10]  We therefore overrule Barnes's second issue on appeal.

## DISCOVERY SANCTIONS

In her third issue, Barnes complains the trial court abused its discretion in sanctioning her $500 in a discovery order dated July 5, 2006.  The record reflects the trial court issued three discovery orders against Barnes.  The first order, entered on December 13, 2005 and not challenged on appeal, granted UFCU's motion to compel and ordered Barnes to respond to UFCU's discovery requests and pay $1,500 in attorneys' fees as sanctions.  The trial court issued a second order on June 12, 2006, granting UFCU's second motion to compel and ordering Barnes to produce

---

[10] Barnes argues the trial court abused its ministerial duty by not enforcing the alleged Rule 11 agreement as an agreed judgment dismissing the suit.  She also argues the trial court abused its discretion by not issuing a declaratory judgment declaring the rights of the parties, as a matter of law, under the Rule 11 agreement.  Because Barnes's breach of contract claim and accord and satisfaction defense presented issues of fact, we conclude the trial court did not abuse its discretion by submitting those issues to the jury.  Tex. Civ. Prac. & Rem. Code Ann. § 37.007 (West 2008 & Supp. 2012) (if declaratory judgment "involves the determination of an issue of fact, the issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions); *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied) (holding fact issues as to the existence of a Rule 11 settlement agreement—when proposed settlement documents were unsigned and agreement was evidenced only by series of letters, documents, and communications between the parties—precluded entry of an agreed judgment).

16

documents responsive to several specific requests for production and overruling her objections to such requests. UFCU filed a motion to enforce the June 12, 2006 order, and a hearing was held on July 5, 2006. After the hearing, the trial court entered an order partially granting UFCU's motion to enforce—ordering that Barnes respond only to Request for Production 26 and awarding UFCU $500 in attorneys' fees.

On appeal, Barnes argues the trial court abused its discretion by sanctioning her $500 in attorneys' fees. But UFCU's motions to compel and enforce were not included in the record, and the record does not otherwise reflect the questions posed by UFCU's requests for production or Barnes's responses. Barnes had the burden "to supply us an appellate record demonstrating the trial court abused its discretion." *University of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 202 (Tex. App.—Austin 1991, no writ). Without the requests for production and responses, we cannot appraise whether the trial court abused its discretion and "must presume that the missing documents would sustain the trial court's ruling." *Id*. (presuming interrogatories and answers missing from record would sustain's trial court's discovery sanction); *see also Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). We therefore overrule Barnes's third issue on appeal.

## SUMMARY JUDGMENT

In her fourth issue, Barnes argues the trial court erred in granting partial summary judgment in favor of UFCU and GEICO. Barnes raised this identical issue in her previous appeal in this case. *Barnes*, 2010 WL 2133946, at *3. After a careful and thorough review of the summary judgment evidence, we held "the trial court did not err in granting summary judgment in favor of UFCU and GEICO." *Id.* at *8. Under the law of the case doctrine, "questions of law decided on

17

appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). Having already concluded as a matter of law that the trial court did not abuse its discretion in granting partial summary judgment, we overrule Barnes's fourth issue on appeal.

## RIGHT TO A FAIR TRIAL

In her final issue on appeal, Barnes alleges— in over thirty pages of argument—that she was deprived of her right to a fair trial due to a multitude of complaints, including the following as stated in the title of her issue: (1) bad faith litigation tactics employed by appellees, (2) incurable jury argument, (3) incurable interjection of matters in violation of the motion in limine, (4) malicious interjection of irrelevant and inadmissible matters to prejudice the jury, (5) perjury by Appellees' witnesses, (6) false evidence, (7) misleading testimony by persons without personal knowledge, (8) incompetent evidence, (9) intentional non-disclosure of pertinent evidence and witnesses with knowledge of relevant facts, (10) misstatement of the law, (11) deliberately misleading the jury to make them to believe there were two loans when there is no promissory note or other loan agreement, (12) false testimony based on speculation, conjecture, and surmise, (13) introduction of letters of UFCU without allowing letters and evidence from Barnes,[11] (14) discovery abuse, and (15) unfair comment on the evidence. In addition to the foregoing complaints, she challenges the legal sufficiency of every unfavorable jury finding,[12] and raises complaints regarding her trial

---

[11] We concluded in our prior discussion of the alleged Rule 11 agreement that this was not an abuse of discretion.

[12] We have already concluded that Barnes did not establish as a matter of law her breach of contract claim arising from the alleged Rule 11 agreement or her affirmative defense of accord and satisfaction.

18

counsel's withdrawal from the case after trial. Many of these complaints are encompassed in her legal sufficiency challenges, and some complaints have been addressed—as noted— in other sections of the opinion. After reviewing the legal sufficiency of the evidence, we will address any remaining and adequately briefed complaints, and then address whether the cumulative affect of these alleged errors caused an unfair trial.

### *Legal Sufficiency of Jury's Findings*

Barnes complains there is no evidence to support the jury's findings in favor of UFCU on its breach of contract claim and damages.[13]  Specifically, she argues there is no evidence supporting the jury's findings that (1) Barnes and UFCU entered into 2 loan agreements, (2) Barnes failed to comply with the loan agreements, and (3) UFCU suffered $11,022.33 in damages as a result of the breach.

When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue for which she did not have the burden of proof, she must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).  "We will sustain a no evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only

---

[13]  Barnes additionally challenges the legal sufficiency of the jury's finding that UFCU did not breach the loan agreement. Barnes argues "there is no evidence to support this finding as a matter of law because there was no evidence of the terms and conditions of the loan agreement." As Barnes had the burden of proof for her breach of contract claim, it is her burden on appeal to establish as a matter of law that UFCU breached the terms of the agreement. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).  As she admits she did not establish as a matter of law the terms of the agreement or how UFCU breached those terms, we conclude she did not meet her burden of proof on appeal.

evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). In reviewing a no evidence point, we must "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 827. If more than a scintilla of evidence supports the jury's finding, "the jury's verdict . . . must be upheld." *Wal-Mart, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

**1. Is the Breach of Contract Finding Supported by Legally Sufficient Evidence?**

In reviewing the evidence in the light most favorable to the jury's findings, we conclude there is more than a scintilla of evidence to support the jury's findings in favor of UFCU on its breach of contract claim. First, Question 1 of the jury charge asked whether UFCU and Barnes had agreed for UFCU "to provide two loans" to Barnes.[14] The jury answered affirmatively, but on appeal, Barnes contends the parties only agreed to one loan and there is no evidence of a second loan. In her live pleadings, however, Barnes pleaded that her negotiations with UFCU "culminated in two separate loans being made."[15] Factual assertions in a party's pleadings, not pled in the alternative, are considered formal judicial admissions and conclusively establish the facts asserted without the introduction of the pleadings or other evidence. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). Accordingly, the fact that UFCU and Barnes entered into two loan agreements is conclusively established in the case without the introduction of other evidence.

---

[14] UFCU contends they provided Barnes with two loans—one loan in the amount of $4,900 and the other in the amount of $9,100.

[15] *See* Plaintiff's First Amended Petition and Plaintiff's Supplemental Original Petition.

Second, Question 3 of the jury charge asked whether Barnes had failed "to comply with her loan agreements." The jury answered affirmatively, after UFCU presented evidence that Barnes failed to comply with the loan agreements by not obtaining comprehensive and collision insurance coverage for her vehicles securing the loans. UFCU admitted two documents, one for each loan, titled "Agreement to Provide Insurance" signed by Barnes. The Agreement provides that "I [Barnes] understand that one of the lender's requirements is that I provide adequate insurance coverage on the property securing my loan. This insurance must at least provide comprehensive and collision coverage." There is no evidence in the record that Barnes obtained the required insurance coverage. Barnes's insurance statements from the relevant time period indicate that she had liability coverage on the vehicles but did not have comprehensive or collision coverage. As such, we conclude there is more than a scintilla of evidence to support the jury's finding that Barnes failed to comply with the loan agreements.

We further conclude there is more than a scintilla of evidence to support the jury's award of damages in the amount of $11,022.33. A collection manager for UFCU testified that the principal, interest, late fees, and collateral protection insurance for the first loan totaled $3,084.74 and for the second loan $7,937.59. The total for the two loans was $11,022.33—the exact amount of damages found by the jury. As such, we conclude there is more than a scintilla of evidence supporting the jury's damages award.

21

**2.      Are the Jury's Findings of Attorneys' Fees Supported by Sufficient Evidence?**

Barnes further complains the amount of attorneys' fees awarded to UFCU was excessive and not supported by sufficient evidence.[16] The reasonableness of attorneys' fees is a fact question for the jury's determination, and a reviewing court may not substitute its judgment for the jury's. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006). But a party seeking attorneys' fees must prove the reasonableness and necessity of the fees with competent evidence. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

The standard of review for remitting excessive damages, including excessive attorneys' fees, is factual sufficiency. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) ("Factual sufficiency is the sole remittitur standard for actual damages. In determining whether damages are excessive, trial courts and courts of appeals should employ the same test as for any factual sufficiency question."); *Olin Corp. v. Smith*, 990 S.W.2d 789, 798 (Tex. App.—Austin 1999, pet. denied); *see also Bocquet*, 972 S.W.2d at 21(holding court of appeals erred in ordering remittitur of award of attorneys' fees without detailing all relevant evidence and explaining why evidence was factually insufficient to support award). Under this standard, we must "examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Pope*, 711 S.W.2d at 624.

---

[16] Barnes also argues the trial court abused its discretion by not segregating the award of attorneys' fees. The jury question on fees did not segregate the amount of fees as to specific claims, and Barnes did not object. If there is no objection "to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). Accordingly, we conclude Barnes has waived this issue on appeal.

Reviewing the evidence in light of this standard, we conclude there is sufficient evidence to support the $35,000 award of attorneys' fees through trial but hold there is insufficient evidence to support the $25,000 award of attorneys' fees to UFCU for an appeal to this Court. With regard to the attorneys' fees incurred through trial, UFCU's attorney of record testified that his firm had expended 353 hours on the case and would require approximately sixty-five additional hours for trial work, that the billable rates for the lawyers at his firm were between $150 to over $300 an hour, that those rates were reasonable compared to other law firms of similar size, and that his client had accrued approximately $63,888.59 in attorneys' fees in preparing the case and would incur an additional $10,000 to $12,000 trying the case. UFCU's attorney further testified that the amount of attorneys' fees was reasonable and not unusual "considering what's gone on for four and half years"—including numerous pretrial hearings and motions. Barnes testified that she had incurred over $60,000 in fees representing herself in pretrial motions and hearings and that her trial counsel had incurred another $25,000 in fees. Although UFCU's total recovery in the case is less than the amount of attorneys' fees awarded, we conclude there is sufficient evidence to support the jury's award of attorneys' fees through trial based on the testimony regarding attorneys' fees, the amount of time the case was pending, and the number of hearings and pre-trial filings. *See USAA Cnty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102-103 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (award of fees greatly exceeding actual damages factually sufficient); *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 441 (Tex. App.—Dallas 2011, pet. denied) ("[T]here is no rule that fees cannot be more than actual damages.").

We do not conclude, however, that there was sufficient evidence to support the full amount of attorneys' fees awarded to UFCU for an appeal to this Court. At trial, UFCU's lawyer

23

testified that his client would incur an additional $10,000 to $15,000 in attorneys' fees if the case were appealed to this Court. The lawyer's testimony regarding appellate attorneys' fees was not challenged on cross-examination or otherwise contradicted by the record. Nevertheless, the jury found UFCU should be awarded $25,000 for this appeal, and the trial court rendered judgment accordingly. The attorneys' fees awarded to UFCU for this appeal clearly exceed the upper amounts to which its attorney testified. Because there is no evidence to support the jury's full award of $25,000, the award is excessive.[17] *See Valley Coca-Cola Bottling, Inc. v. Molina*, 818 S.W.2d 146, 149 (Tex. App.—Corpus Christi 1991, writ denied) (appellate attorneys' fees excessive where amount awarded exceeded attorney's testimony at trial).[18]

A court of appeals may exercise its power to suggest a remittitur when an appellant complains that there is insufficient evidence to support an award, and the court of appeals agrees but finds that there is sufficient evidence to support a lesser award. Tex. R. App. P. 46.3; *Akin, Gump, Strauss, Hauer & Feld, L.L.P., v. National Dev. & Research Corp.*, 299 S.W.3d 106, 123-24 (Tex. 2009); *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 922 (Tex. App.—Austin 2008, no pet.). In this case, the evidence is sufficient to support a finding of attorneys' fees for this

---

[17] UFCU appears to concede this point in its brief by agreeing that there was evidence to support an award of appellate fees for $15,000 but mistakenly asserting that the trial court awarded UFCU $15,000 for this appeal instead of the $25,000 actually awarded: "Mr. Donley also testified that if the matter was appealed it would take approximately another $15,000 to $10,000 in order to handle that appeal at the Court of Appeals. . . . This evidence provides more than a scintilla of evidence upon which the jury could have based its verdict in this case, and upon which the Trial Court could have relied in signing the judgment in this case awarding University $35,000 in attorneys' fees, with an additional $15,000 in case of an appeal to this Court."

[18] Because UFCU's attorney testified that an appeal to the Supreme Court of Texas would cost between $10,000-$15,000, we do not conclude that the $15,000 award of attorneys' fees for an appeal to the Supreme Court of Texas was excessive.

24

appeal in the amount of $15,000 but is insufficient to support the entire amount the jury found. Accordingly, we condition our affirmance on UFCU filing a remittitur in the trial court, within thirty days of the date of this opinion, decreasing the award of appellate attorneys' fees to $15,000 for this appeal. Tex. R. App. P. 46.3; *see Dillard Dep't Stores, Inc. v. Owens*, 951 S.W.2d 915, 920 (Tex. App.—Corpus Christi 1997, no pet.) (suggesting remittitur of excess appellate attorneys' fees when amount awarded clearly exceeded the upper amounts to which attorney testified); *see also Valley Coca-Cola Bottling, Inc.*, 818 S.W.2d at 149.

**3.      Did Barnes Establish as a Matter of Law Her DTPA Claim Against GEICO?**

The jury found against Barnes on her DTPA claims against GEICO.  On appeal, Barnes alleges there is no competent evidence to support the finding because GEICO's sole witness committed "aggravated perjury" and "did not have personal knowledge and only engaged in rank speculation, conjecture, and surmise and rendered nothing but bare legal opinions and conclusions that were not relevant or reliable."  When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co.*, 46 S.W.3d at 241-42.

Barnes makes no attempt on appeal to explain how the evidence established all vital facts in support of her DTPA claims.  Her brief does not contain a clear argument as to how she established her DTPA claims, appropriate citations to authorities supporting her DTPA claims, or citations to the record establishing the evidence in support of her DTPA claims. *See* Tex. R. App. P. 38.1(I); *see also G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 546 (Tex.

25

App.—Dallas 2005, no pet.) (appellate court has no duty to search through the record without guidance from appellant to determine whether its assertion of reversible error is valid). Further, Barnes cites to no evidence—other than her own contrary testimony—of perjury, and Barnes did not object to the testimony on the grounds she now asserts on appeal.[19] *See* Tex. R. App. P. 33.1(a). For these reasons, we conclude Barnes has waived this issue on appeal.

### *Incurable Jury Argument*

Barnes contends that opposing counsel engaged in numerous incurable jury arguments during opening and closing statements. Barnes made two objections during opening and closing statements, which we will review below. Barnes, however, did not preserve error as to her additional complaints by including incurable jury argument as a point in her motion for new trial and has thus waived error for those complaints not objected to at trial. *See* Tex. R. Civ. P. 324(b)(5) (point in a motion for new trial prerequisite to complaint on appeal of incurable jury argument if not otherwise ruled on by trial court); *Clark v. Bres*, 217 S.W.3d 501, 509 n.1 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("While no contemporaneous objection required in order to raise incurable jury argument on appeal, a party must include incurable jury argument as a point in a motion for new trial.").

---

[19] Barnes only twice objected that the witness lacked personal knowledge—objecting that the witness lacked personal knowledge to testify regarding an insurance policy from another carrier and objecting to the witness testifying to GEICO's document production. The trial court sustained the former objection and overruled the latter. Neither objection is the basis for Barnes's current appeal. Barnes made no objection on the grounds that the testimony constituted "bare legal opinions and conclusions that were not relevant or reliable."

During opening statements, UFCU's trial counsel violated the motion in limine by informing the jury that Barnes had sought a temporary restraining order in the case. At a bench conference out of the hearing of the jury, Barnes objected but did not request that the trial court give the jury an instruction to disregard. The trial court instructed UFCU's counsel to not discuss the temporary restraining order but did not give the jury an instruction to disregard. When evidence is placed before the jury in violation of a motion in limine, an instruction to disregard is generally sufficient to cure error. *See Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985); *Lusk v. State*, 82 S.W.3d 57, 60-61 (Tex. App.—Amarillo 2002, pet. denied). In situations where the potential harm can be cured by an instruction to disregard, the complainant must ask the court to so instruct the jury to preserve error—unless the objectionable testimony was so inflammatory that it would be impossible to remove the harmful impression from the jury's mind. *Lusk*, 82 S.W.3d at 60-61; *Jones v. State*, 825 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1991, writ ref'd). Barnes did not request an instruction to disregard, and after reviewing the statement at issue, we cannot conclude that it was so inflammatory that an instruction would not have cured the error. Indeed, Barnes herself testified on cross-examination that she had filed a lawsuit and "got a TRO to restrain ya'll from doing what you did." Based on the foregoing, we conclude Barnes has waived error.

Barnes also objected to UFCU's stating during closing arguments that Barnes had threatened violence in the event UFCU attempted to repossess her vehicles. During a preliminary hearing in the case, the following testimony occurred and was introduced into evidence at the jury trial:

Barnes:     This is going to lead to violence. I came here. I've already talked to them about that. They –

| | |
|---|---|
| Court: | Ms. Barnes, what do you mean this is going to lead to violence? I'm not sure I'm understanding that. |
| Barnes: | These people are stealing. They're going to – |
| Court: | In what way do you mean – you're an officer of the court. |
| Barnes: | Yes. It's going to lead – you cannot come out and physically remove my transportation when I have two children to get to school, and that's what they're saying they're going to do. I don't owe the money. I have full coverage right now. There's no reason for them to keep– |
| Court: | You're anticipating that they are going to use violence? |
| Barnes: | Yes. |
| Court: | You're not telling the Court that you intend to use violence? |
| Barnes: | If they use violence against me, you bet I am. I have a right to self defense. If they come after me, I have a right to defend myself and I will. |
| Court: | Okay. Well, I'm going to counsel you, Ms. Barnes, to be very careful. You're an officer of the court. |
| Barnes: | I don't care. |

During closing arguments, UFCU's counsel stated: "Ms. Barnes has talked about how she tried to surrender the vehicles, say I'll just give them up, you know, you guys just take them. Well, we read into evidence at the first hearing in this matter where Ms. Barnes threatens violence if anybody tries to take those." Barnes's counsel then objected on the grounds that Barnes's statement was misrepresented—that she had actually stated that UFCU would commit violence. The trial court did not make an express ruling on the objection but instructed the jury: "Once again, ladies and

28

gentlemen, as I told you a while ago, you heard the evidence and we'll go from there." Barnes did not request an express ruling or an instruction to disregard.

Based on the foregoing testimony, we conclude the jury argument was not improper because there was direct evidence, as well as inferences from the evidence which supported the argument. *See Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839-40 (Tex. 1979); Tex. R. Civ. P. 269; *see also Gorman v. Life Ins. Co. of N. Am.*, 859 S.W.2d 382, 389 (Tex. App.—Houston [1st Dist.] 1993, no writ) (closing argument accusing other party's agents of "bald-faced lies" not improper where there was evidence from which jury could deduce agents misrepresented facts). "Whether by cross-examination or advocacy, the jury may be encouraged to weigh, evaluate, and test the evidence before it." *Gorman*, 850 S.W.2d at 389. Our review of the record reveals evidence from which the jury could conclude that Barnes threatened violence if UFCU attempted to repossess her vehicles, and therefore the jury argument was not improper.

Even if the argument could be regarded as improper, we do not regard it as so inflammatory or erroneous that proper instruction to the jury would not have cured it. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968) ("If the argument is of a 'curable' nature, an objection to it must be promptly made and an instruction requested or the error is waived."). Accordingly, we conclude UFCU's argument was not improper, and Barnes waived error, if any, by not obtaining a ruling on her objection and requesting an instruction to disregard. *Id.*; *see also PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied) (appellant waived error by not obtaining express ruling on objection to jury argument where trial court stated: "Well, ladies and gentlemen, what was in evidence and what was not in evidence, you heard it, you're the ultimate deciders as to what was said and what was not.").

### *Improper Comments on the Evidence*

Barnes was the plaintiff in this suit, but she argues on appeal that she did not have the burden of proof for all questions submitted to the jury, and the trial court improperly placed the entire burden of proof on her by (1) improperly commenting on the weight of the evidence, and (2) jury charge error. We conclude Barnes waived error as to both complaints by not making a timely, specific objection. *See* Tex. R. App. P. 33.1(a).

Barnes cites to two instances in the record where the trial court informed the jury that Barnes, as the plaintiff having the burden of proof at trial, would be allowed to proceed first during opening and closing arguments. But the record does not demonstrate that Barnes objected to the trial court's comments. A party waives appellate review when it fails to object to a trial judge's comments and request an instruction to disregard unless the comment could not have been rendered harmless by an instruction. *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 129 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also Capellen v. Capellen*, 888 S.W.2d 539, 547 (Tex. App.—El Paso 1994, writ denied) ("Unless the comment by the judge is so blatantly and obviously prejudicial that it cannot be cured, an objection and request for instruction must be made in order to preserve error."). Upon proper objection and request for instruction, the trial court could have easily negated error, if any, as to its comments concerning the burden of proof. We cannot conclude that its comment was so blatantly and obviously prejudicial that an instruction would not have cured it. Accordingly, we conclude Barnes waived error, if any, as to this point.

Barnes further argues the trial court improperly placed the burden of proof on her for all questions in the jury charge. Reviewing the transcript from the charge conference, Barnes did

30

not object to any question on the grounds that the question improperly placed the burden of proof on the wrong party or request an appropriate instruction on the burden of proof. Our procedural rules provide that any complaint to a jury charge is waived unless specifically included in an objection. Tex. R. Civ. P. 274; Tex. R. App. P. 33.1(a)(1); *see also In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("A party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling."). As Barnes did not make the trial court aware of her complaint to the jury charge, she has waived the issue on appeal.

### *Jury Misconduct*

Barnes argues on appeal that the trial court abused its discretion by denying her motion for new trial on the grounds of jury misconduct. Barnes alleges a juror, during deliberations, improperly construed her credit report and shared this mistaken analysis with other jurors. Specifically, she alleges in her motion for new trial and accompanying affidavit, that one juror "who claimed to have experience in reading credit bureau reports . . . stated as fact that Barnes's credit rating was the same before and after the bad faith reporting." The credit report was admitted during Barnes's case-in-chief. Barnes's sole evidence supporting her claims is her own affidavit. We conclude that Barnes has failed to conclusively establish jury misconduct.

We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). "To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury." *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). Whether misconduct occurred and caused injury is a question of fact for the trial

31

court. *Id.* Absent findings to the contrary, we assume that the trial court made all findings in support of its decision to deny the motion for new trial. *Id.* Consequently, Barnes had the burden to conclusively establish jury misconduct. *Id.*

We cannot conclude, based on the record before us, that Barnes conclusively established jury misconduct. First, an affidavit of a party or counsel is insufficient to establish jury misconduct during deliberations because it must be presumed, because of the secretive nature of jury deliberations, that the affidavit could not be based on personal knowledge. *Pabich v. Kellar*, 71 S.W.3d 500, 510 (Tex. App.—Fort Worth 2002, pet. denied); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 828 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Further, when the ground for a motion for new trial is jury misconduct, the trial court may not admit—unless an outside influence was improperly brought to bear upon any juror—juror testimony regarding statements made during deliberations or "evidence of any statement" by a juror which would otherwise be precluded. Tex. R. Civ. P. 327; Tex. R. Evid. 606(b). We cannot conclude that the juror's alleged analysis of Barnes's properly admitted credit report, based on the juror's own experience or expertise, was misconduct resulting from an outside influence. *See Golden Eagle Archery, Inc.*, 24 S.W.3d at 370 ("The rules contemplate that an 'an outside influence' originates from sources other than the jurors themselves."); *Soliz v. Saenz*, 779 S.W.2d 929, 932 (Tex. App.—Corpus Christi 1989, writ denied) (juror's interjection of personal experience or expertise into discussion not an "outside influence"). As such, Barnes has failed to present competent, admissible evidence of jury misconduct.

Finally, even if we had competent evidence to support Barnes's allegations, we could not conclude the juror engaged in misconduct by construing a credit report properly admitted into evidence. Even if the juror misunderstood the evidence in the credit report, a "[j]uror's deductions,

inferences from the evidence, and reasoning, though faulty, illogical, arbitrary or bizarre, do not constitute misconduct." *Griffith v. Hudspeth*, 378 S.W.2d 153, 156 (Tex. Civ. App.—San Antonio 1964, no writ). Accordingly, we conclude the trial court did not abuse its discretion by denying the motion for new trial.

### *Discovery Abuse*

Barnes argues GEICO engaged in discovery abuse by failing to disclose the identity of an employee who spoke with Barnes regarding her insurance coverage. We cannot appraise the merit of Barnes's claim because the relevant discovery questions and answers are not included in the record. *See Hinton*, 822 S.W.2d at 202. Further, Barnes does not point to anything in the record showing the trial court overruled a motion, objection, or request for relief regarding the alleged discovery abuse. A complaint not presented to the trial court by a timely, specific objection is not preserved for appeal. Tex. R. App. P. 33.1(a); *Hallett v. Houston Nw. Med. Ctr.*, 689 S.W.2d 888, 890 (Tex. 1985) ("A party cannot wait until the trial is finished, then seek to reverse an unfavorable verdict by complaining of an error which the trial court could have corrected had it been timely informed of the error."); *see also Warrantech Corp. v. Computer Adapters Servs. Inc.*, 134 S.W.3d 516, 530-31 (Tex. App.—Fort Worth 2004, no pet.) (denial of motion for new trial on grounds of discovery abuse not abuse of discretion where complaining party failed to seek prior relief from trial court). Accordingly, we conclude Barnes has waived error, if any, regarding GEICO's discovery responses.

### *Motion to Withdraw*

Barnes complains the trial court abused its discretion by permitting her trial counsel to "withdraw after trial before the judgment was ever signed and entered." Her trial counsel's

33

motion to withdraw and the trial court's order granting such motion are not included in the record. It is the burden of the appellant to bring forward a sufficient record to show the error committed by the trial court. *Christiansen*, 782 S.W.2d at 843. Barnes does not include sufficient facts, argument, or authority for us to render judgment on this issue without reviewing the motion to withdraw and the trial court's order. We do, however, note that Barnes herself is an attorney with over twenty-five years' experience who represented herself in this matter up until trial and adequately perfected her own appeal. Accordingly, based on the record before us, we cannot conclude that counsel's withdrawal probably caused the rendition of an improper judgment or probably prevented Barnes from presenting her own case on appeal. Tex. R. App. P. 44.1(a).

### *False Accusations and Inflammatory Statements, Comments, and Arguments*

Barnes makes numerous complaints regarding statements made by witnesses and attorneys at trial referring to her credit history, driving record, and occupation as a lawyer. To the extent Barnes objected to these comments, we conclude the evidence was relevant, and the trial court could have concluded the probative value of the evidence was considerable compared to its potential to unfairly prejudice Barnes. *See* Tex. R. Evid. 403. First, Barnes herself testified at trial during direct examination that she was an attorney practicing law for over twenty-five years, and the fact that she was an attorney was relevant as she had represented herself during much of the litigation. In addition, Barnes's credit history prior to her loan with UFCU was relevant to the type of loan UFCU offered and the terms of such loan, and her driving record was relevant to the type of insurance policy offered by GEICO and the cost of such policy—all contested issues at trial.

34

### *Right to a Fair Trial*

In her final complaint, Barnes argues that the cumulative effect of the aforementioned alleged errors deprived her of the right to a fair trial under the United States and Texas Constitutions. A number of errors may be found harmful in their cumulative effect. *See Strange v. Treasure City*, 608 S.W.2d 604, 609 (Tex. 1980). However, in the multitude of issues Barnes presented in this appeal, we concluded the trial court committed only one error by rendering excessive attorneys' fees to UFCU. Such error will be remedied by this Court through a suggestion of remittitur. As such, we cannot conclude that Barnes was deprived of her right to a fair trial.

### CONCLUSION

We affirm the trial court's judgment conditioned on UFCU's filing a remittitur in the trial court decreasing its award of attorneys' fees for this appeal to $15,000 and notifying this Court of the filing. If the remittitur is filed within thirty days of the date of this opinion, we will reform the judgment and affirm as modified. Otherwise, we will reverse the trial court's judgment as to attorneys' fees for this appeal and remand this cause for redetermination of attorneys' fees for this appeal. *See* Tex. R. App. P. 46.3.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Conditionally Affirmed

Filed: April 18, 2013

35